**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Luigi M. DI FONZO, Defendant-Appellant.**

**No. 79–1142.**

United States Court of Appeals, Seventh Circuit.

Argued June 13, 1979.

Decided Aug. 2, 1979.

Rehearing and Rehearing In Banc Denied Oct. 15, 1979.

---

James J. Cutrone, Chicago, Ill., for defendant-appellant.

Thomas P. Sullivan, U. S. Atty., Julian Solotorovsky, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT and CUMMINGS, Circuit Judges, and CAMPBELL, Senior District Judge.[1]

SWYGERT, Circuit Judge.

The principal question raised by this appeal concerns the scope of the Security Exchange Commission's ("SEC") "jurisdiction" pursuant to 18 U.S.C. § 1001, a statute which punishes false statements made "in any matter within the jurisdiction of any department or agency of the United States." We hold that the false statements submitted by defendant to the SEC were within that agency's jurisdiction and affirm his conviction.

I

Defendant Luigi M. DiFonzo operated a business which sold commodity options to the public. From January 1973 to May 1973 this business operated under the name "North American Commodity Options Exchange, Inc." From May 1973 to January 1974 the business was named "North American Investments Company, Inc." Defendant bought and sold commodity futures through these two corporations, utilizing the services of several brokerage houses.

In early 1973 the Chicago Regional Office of the SEC began to investigate defendant and his investment company. During this investigation defendant submitted to the SEC documents issued by Siegal Trading Company, Inc. ("Siegal"), a brokerage house with which defendant had an account. The SEC investigation eventually discovered that defendant had altered figures in these documents in order to make his investment company appear more solvent.

On February 1, 1978 defendant was charged in a three count indictment with presenting documents to the SEC which contained false statements in violation of 18 U.S.C. § 1001.[2] Count I charged that defendant presented the SEC with a document which purported to confirm defendant's purchase (through Siegal) of thirty-two silver futures commodity contracts when in fact, Siegal had made no such purchase for defendant's account. Counts II and III alleged that defendant submitted documents to the SEC which overstated the balance of two accounts defendant had with Siegal.

Numerous pretrial motions were filed by defendant including a motion to dismiss the indictment for failure to state an offense under 18 U.S.C. § 1001 on the ground that the indictment on its face alleged facts showing that the SEC did not have jurisdiction over defendant's activities and that, therefore, the alleged false statements were neither made in nor material to a matter within the jurisdiction of the SEC. The district court denied this motion.

On December 21, 1978 defendant entered a plea of guilty to Counts II and III of the indictment. The Government dismissed Count I of the indictment and the district court entered judgment. Sentence was entered January 30, 1979. On February 9, 1979 defendant filed this appeal.

II

The Government argues that we need not reach the question whether defendant's false statements were within the jurisdiction of the SEC pursuant to 18 U.S.C. § 1001, because the defendant, by pleading guilty to the charge brought by the Government under the statute, waived his right to contest the issue on appeal. Defendant responds that if, as he contends, the false statements did not pertain to a matter within the jurisdiction of the SEC, the in-

1. The Honorable William J. Campbell, United States Senior District Judge for the Northern District of Illinois, Eastern Division.

2. 18 U.S.C. § 1001 provides:
 Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement of entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

dictment fails to state an offense and therefore the general rule that a guilty plea bars subsequent attacks on a conviction does not apply.

 It is well established that a valid guilty plea waives objections based on most prior defects in the Government's prosecution of a defendant. *See Coleman v. Burnett*, 155 U.S.App.D.C. 302, 309, 477 F.2d 1187, 1194 (1973), and cases cited therein. It is equally well established that if a defendant contends that his indictment was so defective that it failed to charge an offense, his plea of guilty does not bar his subsequent challenge to the indictment on appeal. *Id.* 155 U.S.App.D.C. at 309 n. 20, 477 F.2d at 1194, n. 20; *Melvin v. United States*, 316 F.2d 647, 648 (7th Cir. 1963). The scope of such a challenge to the sufficiency of the indictment, however, is not unrestricted. The defendant is not permitted to transcend the four-corners of the indictment in order to demonstrate its insufficiency. *Melvin, supra*, 316 F.2d at 648. And a guilty plea is an admission of all the factual allegations contained in the indictment. *Coleman, supra*, 155 U.S.App.D.C. at 308, 477 F.2d at 1193; *United States v. Singletary*, 441 F.2d 333 (5th Cir. 1971). As we said in *United States v. Friedman*, 416 F.2d 947, 949 (7th Cir. 1969), "In the absence of any factual determination below construing the indictment, defendant's voluntary and knowing plea of guilty is an admission to all the stated allegations of the indictment . . . ." In essence, a defendant who has pleaded guilty must show that the words and allegations of the indictment on its face failed to state an offense in order to challenge successfully his conviction on appeal.

The Government correctly observes that Counts II and III of the indictment against defendant each contain an allegation that defendant presented a false statement to the SEC "in a matter within the jurisdiction of the S.E.C." Given the fact that a guilty plea constitutes an admission to the allegations of the indictment, this jurisdictional allegation normally would preclude any appellate inquiry concerning the SEC's jurisdiction vis-a-vis defendant's false statements. The indictment against defendant, however, also contains preliminary factual allegations describing defendant's business operations. Defendant argues that these facts preclude the conclusion of Counts II and III that defendant's false statements were in a matter within the jurisdiction of the SEC. In effect, defendant contends that the indictment contradicts itself on its face: Counts II and III assert that SEC jurisdiction was present, while the preliminary factual allegations demonstrate that defendant's business activities could not be within the legitimate purview of the SEC. *See* Reply Brief for Defendant-Appellant, pp. 4–5, n. 3.

We agree with defendant's position that appellate review of his conviction is available on these grounds. If defendant can demonstrate that the preliminary factual allegations of the indictment preclude the indictment's later conclusion that his false statements pertained to a matter within the jurisdiction of the SEC, he will have shown that the indictment contradicts itself, and, more importantly, that the preliminary factual allegations of the indictment negate one of the elements of the offense charged. He will have shown that the indictment "fails to state an offense," which is an infirmity in the Government's prosecution which survives a defendant's guilty plea.

 Although we agree with defendant's position on the preliminary issue of whether his appeal survives his plea of guilty, we disagree with his contention that the preliminary factual allegations of the indictment, on their face, preclude a conclusion that the false statements he presented to the SEC related to a matter within the SEC's jurisdiction. The Supreme Court said in *Bryson v. United States*, 396 U.S. 64, 90 S.Ct. 355, 24 L.Ed.2d 264 (1969):

Because there is a valid legislative interest in protecting the integrity of official inquiries, *see United States v. Bramblett*, 348 U.S. 503, 75 S.Ct. 504, 99 L.Ed. 594 (1955); *United States v. Gilliland*, 312 U.S. 86, 93, 61 S.Ct. 518, 85 L.Ed. 598 (1941), we think the term "jurisdiction"

should not be given a narrow or technical meaning for purposes of § 1001, *Ogden v. United States*, 303 F.2d 724, 742–43 (C.A.9th Cir. 1962); *United States v. Adler*, 380 F.2d 917, 921–922 (C.A.2d Cir. 1967). A statutory basis for an agency's request for information provides jurisdiction enough to punish fraudulent statements under § 1001.

*Id.* at 70–71, 90 S.Ct. at 359. The Government contends that the statutory jurisdiction of the SEC for purposes of the jurisdictional requirement of section 1001 "goes beyond the Commission's statutory authority to regulate, and includes their authority to investigate to determine whether securities laws are being violated."[3] Brief of Plaintiff-Appellee, p. 10. We need not decide whether statutory authority to investigate, without more, is sufficient to satisfy the jurisdictional requirement of section 1001.[4] In this case there was a sufficient nexus between the subject matter of the SEC investigation which led to defendant's submission of false documents to the SEC and the SEC's regulatory authority to satisfy the jurisdiction requirement of section 1001.

Because of his guilty plea, defendant must demonstrate that the description of his business activities found in the preliminary factual allegations of the indictment, given the applicable law, negates the indictment's conclusory allegation that the false statements made by defendant (and the SEC investigation which prompted them) were within the SEC's jurisdiction. *See, supra,* pp. 1262–1264. The preliminary factual allegations of the indictment state that defendant "operated a business which sold commodity options to the public . . [and] caused [his business] to buy and sell commodity futures by use of various commodity brokerage firms." This description of defendant's activities does not absolutely remove them from the legitimate purview of the SEC. Thus, the SEC investigation into these activities had a sufficient jurisdictional base to satisfy the requirement of section 1001.

At the time the SEC began its investigation in 1973, there was general agreement that commodity futures contracts were not securities and therefore not subject to regulation under the Securities Act of 1933. *See Milnarik v. M–S Commodities, Inc.,* 457 F.2d 274, 275 n. 1 (7th Cir.), *cert. denied,* 409 U.S. 887, 93 S.Ct. 113, 34 L.Ed.2d 144 (1972).

---

**3.** The SEC's investigatory authority is rooted in two statutory provisions:

15 U.S.C. § 77t(a) provides that:

Whenever it shall appear to the Commission, either upon complaint or otherwise, that the provisions of this subchapter, or of any rule or regulation proscribed under authority thereof, have been or are about to be violated, it may, in its discretion, either require or permit such person to file with it a statement in writing, under oath, or otherwise, as to all the facts and circumstances concerning the subject matter which it believes to be in the public interest to investigate, and may investigate such facts.

And 15 U.S.C. § 78u(a) states:

The Commission may, in its discretion, make such investigations as it deems necessary to determine whether any person has violated, is violating, or is about to violate any provisions of this chapter, the rules or regulations thereunder, the rules of a national securities exchange or registered securities association of which such person is a member or a person associated with a member, the rules of a registered clearing agency in which such person is a participant, or the rules of the Municipal Securities Rulemaking

Board, and may require or permit any person to file with it a statement in writing, under oath or otherwise as the Commission shall determine, as to all the facts and circumstances concerning the matter to be investigated.

**4.** In *Friedman v. United States*, 374 F.2d 363 (8th Cir. 1967), the Eighth Circuit held that a false statement given to the FBI in order to precipitate a federal prosecution under the Civil Rights Laws was not related to a matter within the jurisdiction of any department or agency for purposes of section 1001 because although the FBI "had authority to investigate" it had "no power to adjudicate rights, establish binding regulations, compel the action or finally dispose of the problem giving rise to the inquiry." *Id.* at 368. *Contra United States v. Adler,* 380 F.2d 917 (2d Cir. 1967). *See also United States v. Isaacs,* 493 F.2d 1124 (7th Cir.), *cert. denied,* 417 U.S. 976–77, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974). In *Bryson* the Supreme Court acknowledged *Friedman* and explicitly indicated that *Bryson* neither approved nor disapproved *Friedman's* holding.

And in *Milnarik,* we held that a discretionary trading account in commodity futures was not a security. *Id.* This view was confirmed and expanded in several later decisions. *See Hirk v. Agri-Research Council, Inc.,* 561 F.2d 96 (7th Cir. 1977); *Glazer v. National Commodity Research and Statistical Service, Inc.,* 547 F.2d 392 (7th Cir. 1977). Defendant argues that these decisions and the legislative history underlying various Congressional enactments (particularly the Commodity Exchange Act of 1974) demonstrate that the SEC could have had no regulatory authority over defendant's commodity trading activities.

Defendant's position neglects two important facts. First, although the Seventh Circuit decision in *Milnarik* held that discretionary trading accounts in commodities were not subject to SEC regulation, a prior district court decision from the Second Circuit had reached the opposite conclusion. *See Maheu v. Reynolds & Co.,* 282 F.Supp. 423, 426 (S.D.N.Y.1967). And several decisions subsequent to *Milnarik* refused to follow the Seventh Circuit and instead concluded that discretionary trading accounts in commodities were subject to SEC supervision. *See SEC v. Continental Commodities Corp.,* 497 F.2d 516 (5th Cir. 1974); *Marshall v. Lamson Bros.,* 368 F.Supp. 486 (S.D.Iowa 1974). *See also SEC v. Commodity Options Inter., Inc.,* 553 F.2d 628 (9th Cir. 1977) ("naked double options" constitute securities); *SEC v. American Commodity Exchange, Inc.,* 546 F.2d 1361 (10th Cir. 1976).[5] And even our decision in *Hirk* required a reevaluation of *Milnarik* in light of the Fifth Circuit's decision in *Continental Commodities. Hirk, supra,* 561 F.2d at 100–01. The rule regarding SEC jurisdiction over certain forms of commodity trading

was not firmly settled; if the SEC investigation demonstrated that defendant's business had used discretionary commodity trading accounts or had traded in naked double options, defendant's trading arguably would have been within the SEC's regulatory jurisdiction. And there is nothing in the indictment's description of defendant's business which precludes the possibility that his business participated in these forms of commodity trading.

The second deficiency in defendant's position is that it fails to give sufficient consideration to the preliminary nature of the SEC investigation which precipitated defendant's submission of false statements to the SEC. In an analogous context, it has long been settled that questions about SEC regulatory jurisdiction should not be decided in subpoena enforcement actions. *SEC v. Savage,* 513 F.2d 188, 189 (7th Cir. 1975); *SEC v. Brigadoon Scotch Distributing Co.,* 480 F.2d 1047, 1052–53 (2d Cir. 1973), *cert. denied,* 415 U.S. 915, 94 S.Ct. 1410, 39 L.Ed.2d 469 (1974); *SEC v. Wall Street Transcript Corp.,* 422 F.2d 1371 (2d Cir. 1970). *See also Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 201, 66 S.Ct. 494, 90 L.Ed. 614 (1946). As we said in *Savage,* to hold otherwise "would require SEC to answer at the outset of its investigation the possibly doubtful questions of fact and law that the investigation is designed and authorized to illuminate." *Savage, supra,* 513 F.2d at 189.

The same reasoning applies here. The SEC began an investigation in a field in which it arguably possessed regulatory authority and defendant submitted false statements to the SEC in the course of that

---

5. At page 17 of its brief the Government asserted, "While this Court held in 1972 that commodity option contracts were not securities, other circuits had held otherwise," and cited cases purportedly supporting this proposition. The Government's statement is misleading, at best. In fact, none of the cases cited by the Government held that conventional commodity option contracts were securities. *But see SEC v. American Commodity Exchange, Inc.,* 546 F.2d 1361, 1366 (10th Cir. 1976) (dicta). Instead, two of these cases dealt with trading in naked double options and the rest with discretionary trading accounts. In fact, several of these decisions explicitly distinguished the trading they were concerned with from trading in either commodity futures contracts, *see e. g., SEC v. Continental Commodities Corp.,* 497 F.2d 516, 520 n. 9 (5th Cir. 1974); *Maheu v. Reynolds & Co.,* 282 F.Supp. 423, 426 (S.D.N.Y. 1967), or conventional commodity option contracts. *See SEC v. Commodity Options Inter., Inc.,* 553 F.2d 628, 630–31 (9th Cir. 1977).

investigation. To conclude that section 1001 does not apply if a defendant ultimately can show that the false statements he submitted pertained to matters outside the regulatory jurisdiction of the SEC would cripple the SEC's preliminary investigatory capacities, thereby frustrating its ability to make an intelligent, independent assessment of whether it possesses regulatory authority over a given person's activities. Thus when, as here, there is a nexus between a person's business activities and the regulatory authority of the SEC and the SEC initiates an investigation into those activities, any false statements submitted to the SEC pursuant to the investigation are subject to prosecution under 18 U.S.C. § 1001.

Finally, defendant contends that his conviction should be overturned because his false statements were not "material" to a matter within the jurisdiction of the SEC. Defendant's argument is based on the conclusion of several circuits that materiality is an essential element of a section 1001 conviction. *See, e. g., United States v. Beer*, 518 F.2d 168 (5th Cir. 1975); *United States v. Deep*, 497 F.2d 1316 (9th Cir. 1974). The test of the materiality of a statement is "whether a statement 'has a natural tendency to influence, or was capable of influencing, the decision of the tribunal in making a determination required to be made.'" (Citations omitted.) *Beer, supra*, 518 F.2d at 171. *See also Deep, supra*, 497 F.2d at 1321. And the Fifth Circuit in *Beer* added:

> [T]he cases previously cited on the requirement of materiality are in agreement that the agency need not actually have relied or acted to its detriment upon the false statement, but the government must still show that the statement had the capacity to influence a determination required to be made.

*Beer, supra*, 518 F.2d at 172.

As defendant's brief notes, the "requirement of 'agency jurisdiction' and 'materiality' are logically related." Brief for Defendant-Appellant, p. 21, n.14. In order for the SEC to make an informed decision about whether it possessed jurisdiction or whether any suspicious business activities worthy of continued investigation had transpired, it needed to request preliminary information from defendant. And the false statements submitted by defendant in response to the SEC request were capable of influencing these essential agency decisions. Thus, the materiality requirement was satisfied.

Defendant's conviction is affirmed.