772 F.2d 909
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES OF AMERICA, PLAINTIFF-APPELLEE,
v.
JAMES HUBBLE, DEFENDANT-APPELLANT.
 NO. 84-5866
 United States Court of Appeals, Sixth Circuit.
 8/22/85
 
 W.D.Ky.
 AFFIRMED
 On Appeal from the District Court for the Western District of Kentucky
 BEFORE: KENNEDY and KRUPANSKY, Circuit Judges; DOWD,* District Judge.
 PER CURIAM.
 
 
 1
 Hubble appeals from the District Court's denial of his 28 U.S.C. Sec. 2255 motion to vacate sentence. On May 11, 1981, appellant was arrested, and on June 1, 1981, an indictment was handed down, charging him with sparate counts of manufacture, transportation and possession of a molotov cocktail, manufacture and possession of a pipe bomb, and possession of a sawed-off shotgun, in violation of 26 U.S.C. Sec. 5861;[1] separate counts of being a former felon in possession of each of those weapons, in violation of 18 U.S.C. app. Sec.1202(a)(1);[2] and transportation of a pipe bomb, in violation of 18 U.S.C. Sec. 844(d).[3] On June 18, 1981, defendant's appointed counsel filed a motion requesting that the District Court authorize a psychiatric examination pursuant to 18 U.S.C. Sec. 3006A(e).[4] Prior to a scheduled hearing on this motion, the court ordered that defendant have a competency examination pursuant to 18 U.S.C. Sec. 4244. Counsel objected to this order, and the court rescheduled a hearing on defendant's motion for a Sec. 3006A(e) examination. The court subsequently ordered on August 8, 1981, that defendant be committed to the Medical Center for Federal Prisoners at Springfield, Missouri. Following his return from Springfield, and prior to a hearing on his motion for a Sec. 3006A(e) examination,[5] defendant changed his plea to guilty and was sentenced pursuant to a plea bargaining agreement to twelve years imprisonment,[6] under 18 U.S.C. Sec. 4205(b)(2).[7]
 
 
 2
 On September 12, 1983, defendant filed a pro se motion to vacate. In this motion, he alleged that his plea of guilty was involuntary, due to mental incompetence, and the erroneous statements of counsel and and sentencing judge that he could be subject to up to 78 years imprisonment on the charges in the indictment; that his conviction was obtained by use of a coerced confession, brought about by the oppressive conditions of his confinement and lack of treatment for withdrawal symptoms from drug dependency; that the indictment and subsequent conviction violated the self-incrimination clause of the Constitution because the Sec. 1202(a)(1) counts did not allege an effect on commerce, and because in pleading guilty to a related offense in state court he was not made aware that he was subject to further federal prosecution; ineffectiveness of counsel, based upon counsel's miscalculation of the maximum possible sentence on the indictment, and failure to question co-defendants, challenge the facial insufficiency of the indictment, move to suppress defendant's confession, failure to file a motion with the court requesting that defendant have access to his wife and co-defendant, Linda Brantley, as well as legal materials, and failure to follow up on the Sec. 3006A(e) examination in support of his insanity defense; and because the sentencing judge violated the plea agreement by recommending to the Parole Commission that it not grant defendant an early release. The matter was referred by the District Court to a magistrate, who determined that an evidentiary hearing was required on the motion, and appointed new counsel for the petitioner.
 
 
 3
 Following the evidentiary hearing, the magistrate issued his findings of fact, conclusions of law and recommendation that petitioner's motion be denied. The magistrate concluded that, at least with respect to the Sec. 5861 counts, charges of manufacture, possession and transport of the same weapon could not be pyramided by consecutive sentencing. See United States v. Kaplan, 588 F.2d 71, 74 (4th Cir. 1978) (possession and manufacture); United States v. McDaniel, 550 F.2d 214, 219 (5th Cir. 1977) (possession and transport). Hence, he found that defendant could not have been sentenced to 78 years as represented to him by the sentencing judge.[8] Petitioner testified that his counsel had represented to him that he could be sentenced to 78 years imprisonment and that he would not have pleaded guilty had he been advised otherwise. The magistrate found that petitioner's counsel did not make such a representation, and that the sentencing judge's statement regarding a 78-year maximum sentence did not influence defendant's decision to plead guilty, which he had reached prior to the hearing. The magistrate found that defendant was competent at the time he entered his plea, and concluded that the coerced confession and Sec. 3006A(e) motion questions were mooted by entry of the guilty plea. See Tollett v. Henderson, 411 U.S. 258, 267 (1973). The District Court adopted the findings of fact and conclusions of law of the magistrate, and denied defnendant's motion.
 
 
 4
 When a criminal defendant has entered a guilty plea, he may not thereafter raise independent claims relating to prior alleged deprivations of rights. He may only challenge the voluntariness of the plea itself. Tollett v. Henderson, supra; Campbell v. Marshall, No. 84-3404, slip op. at 8-9 (6th Cir. July 23, 1985). The appellant does not contend on appeal that counsel's failure prior to entry of the plea to file a suppression motion or pursue a Sec. 3006A(e) psychiatric examination affected his decision to plead guilty. Therefore, he may not collaterally attack his sentence on those grounds. Moreover, the record before us belies defendant's contention that the time and effort expended by counsel on his case was so minimal as to amount to ineffective assistance.
 
 
 5
 Nor has defendant moved for correction or reduction of his sentence by two years, based upon the alleged defect on the face of the indictment in failing to allege a nexus to commerce in the Sec. 1202(a)(1) counts.[9] Rather, he has raised this point on appeal only in connection with his contention that he was given erroneous information about the maximum sentence possible on the indictment. Since it is undisputed that the possession counts under Sec. 5861 cannot be pyramided on the manufacture and transportation counts, and thus that there is a discrepancy of at least 20 years between the sentence defendant was told by the judge he could receive and that which he actually could have received, it is unnecessary to address the validity of this particular claim.[10]
 
 
 6
 Finally, there is no merit to defendant's contention that the sentencing judge's comments violated the terms of the plea bargain. He received the sentence for which he bargained, and acknowledged at the Rule 11 hearing that the court could not be bound by his agreement with the prosecutor. See also United States v. Mooney, 654 F.2d 482 (7th Cir. 1981) (since judge's remarks regarding release of defendant sentenced under Sec. 4205(b)(2) cannot bind the Parole Commission, they are without legal effect).
 
 
 7
 As to the voluntariness of defendant's plea, the magistrate's finding that defendant decided to plead guilty upon returning from Springfield; that his counsel did not specifically advise him that he could be sentenced to a maximum of 78 years under the indictment, but only that his potential sentence was substantially greater than the twelve-year plea bargain being offered; and that he was competent at the time he entered his plea, are supported by substantial evidence in the record and hence are not clearly erroneous. The remaining question that must be decided is whether the sentencing judge's overstatement of the maximum sentence defendant could receive undermined the voluntariness of his plea.
 
 
 8
 In order to collaterally attack a conviction based on a guilty plea on the ground that Rule 11 of the Federal Rules of Criminal Procedure was violated when the plea was accepted, the defendant must show "a fundamental defect which inherently results in a complete miscarriage of justice, [ ] or an omission inconsistent with the rudimentary demands of fair procedure." United States v. Timmreck, 441 U.S. 780, 783 (1979) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)), rev'g 577 F.2d 372 (6th Cir. 1978).
 
 
 9
 In Keel v. United States, 585 F.2d 110 (5th Cir. 1978) (en banc), a case very similar to the instant one, the defendant had entered a guilty plea under the terms of a plea bargain for a twelve-year sentence. During the Rule 11 hearing, the sentencing judge erroneously stated that the maximum sentence that could have been imposed on conviction was 45 years, rather than 25 years, because the indictment charged multiple counts that could not be pyramided. The court held that defendant had failed to make the showing of prejudice necessary to support a collateral attack on his conviction, based upon the following findings of fact: the mistake on the part of the judge was unintentional; defendant was not threatened with a 45-year sentence if he did not plead guilty; the erroneous information was conveyed after defendant had already decided to plead guilty and did not effect his decision to change his plea from not guilty to guilty; and the defendant received the twelve-year sentence for which he had bargained. 585 F.2d at 113.
 
 
 10
 In the instant case, the magistrate, relying upon Keel, concluded that appellant failed to establish the prejudice necessary to entitle him to have his sentence vacated pursuant the Sec. 2255, based upon the following findings:
 
 
 11
 the Rule 11 violation was not intentionally committed; contrary to his testimony defendant was not threatened by counsel with a seventy-eight (78) year sentence; defendant had decided to plead guilty on his return from Springfield well before the erroneous information was given at the Rule 11 hearing; said information did not influence defendant's decision to plead guilty, and defendant actually received the sentence for which he bargained. The sentencing judge's miscalculation of the maximum sentence was imparted to defendant at a point where it caused no prejudice to him as he had already decided to enter a guilty plea after discussing the matter with counsel on three separate occasions. [emphasis added]
 
 
 12
 It might be that the instant case differs from Keel, in that defendant was not informed of the maximum possible sentence he could receive by counsel prior to the Rule 11 hearing. The Keel court failed to note whether the defendant therein had been made aware by counsel of the correct maximum sentence he could receive prior to his Rule 11 hearing. Cf. Timmreck, 441 U.S. at 784 ('Respondent does not argue that he was actually unaware of the special parole term or that, if he had been properly advised by the trial judge, he would not have pleaded guilty. His only claim is of a technical violation of the Rule.'); United States v. Scott, 625 F.2d 623, 625 (5th Cir. 1980) (per curiam) ('Scott . . . alleged that he would not have tendered a guilty plea had the district court advised him of the potential six-year sentence under the Youth Correction Act. This allegation distinguishes Scott's pleadings, albeit slightly, from those in Timmreck . . ..'). Defendant testified at the evidentiary hearing that had he been correctly advised of the maximum potential sentence he could receive, he would have gone to trial.
 
 
 13
 The crux of this issue is whether the sentencing judge's erroneous statement that defendant could receive a 78-year sentence was a 'technical' violation of Rule 11, or inherently undermined the voluntariness of defendant's plea. Given that defendant had never previously been informed specifically of his maximum exposure under the indictment, it is insufficient to conclude merely that he was not induced to plead guilty by the erroneous statement. It may be, had he been correctly informed in the first instance by the sentencing judge of the precise maximum sentence he could receive, that he would have changed his mind.
 
 
 14
 While Rule 11 was adopted to avoid after-the-fact inquiries into defendants' state of mind, see McCarthy v. United States, 394 U.S. 459, 469-70 (1969); Phillips v. United States, 519 F.2d 483, 485 (6th Cir. 1975), the circumstances of the instant case required that an evidentiary hearing be held to determine whether defendant would not have pled guilty for the District Court's erroneous statement that he could receive a 78-year sentence. See United States v. Scott, supra. Such a hearing was held, and the magistrate found, in effect, that, had the defendant been told the correct maximum sentence he could receive, it would not have changed his decision to plead guilty. This finding is supported by the testimony of defendant's appointed counsel, who described defendant as very intelligent and aware of the parameters of his case, and insisted for this reason that he was careful to provide defendant with detailed explanations and leave decisions in defendant's hands. Defendant's testimony also provides some support for the magistrate's finding. When asked whether he would have entered a plea of guilty to the charge if he had believed or counsel had represented that he had a viable insanity defense, defendant replied, 'I think if he had raised the issue--if he had went into it deeper I wouldn't have pled guilty, but he refused to go any further with it, with that issue.' When this statement is taken in conjunction with counsel's testimony, the magistrate could reasonably conclude that defendant's real objection was that counsel did not advocate or persuade him to go to trial on an insanity defense. Nor can it be argued that defendant's plea, while voluntary, cannot be regarded as having been intelligent, in that he was never informed of the precise maximum sentence that he could receive, since he was correctly advised by counsel that his exposure on the indictment substantially exceeded the twelve-year term being offered on the plea bargain. Since, on the basis of the record, the magistrate's factual finding--that defendant would not have pled differently had the sentencing judge correctly stated the maximum sentence defendant could receive--is not clearly erroneous, the judgment of the District Court is AFFIRMED.
 
 
 
 *
 The Honorable David D. Dowd, Jr., United States District Court for the Northern District of Ohio, sitting by designation
 
 
 [1]
 Violations of Sec. 5861 are punishable by up to ten years imprisonment and a $10,000 fine. 26 U.S.C. Sec. 5871
 
 
 [2]
 Violations of Sec. 1202(a)(1) are punishable by up to two years imprisonment and a $10,000 fine
 
 
 [3]
 Violations of Sec. 844 are punishable by up to 10 years imprisonment and a $10,000 fine
 
 
 [4]
 Section 3006A(e) provides for government-paid experts for indigent defendants when necessary for the preparation of an adequate defense
 
 
 [5]
 The Springfield report, which was shown to defendant by counsel upon his return to Tennessee, stated both that he was presently competent, and that he was legally sane at the time he committed the crimes charged. Neurological tests were performed as well, the results of which were normal
 
 
 [6]
 He was sentenced to concurrent 10 year terms on the Secs. 5861 & 844(d) counts, and concurrent two-year terms on the Sec. 1202(a)(1) counts, the 10 and two-year terms to be served consecutively
 
 
 [7]
 Under Sec. 4205(b)(2), the court sets a maximum sentence, leaving to the discretion of the Parole Commission a decision on a parole release date. As part of the plea agreement, the government agreed not to oppose an early release date for the defendant
 
 
 [8]
 The judge made this statement at the Rule 11 hearing on entry of defendant's guilty plea. The following exchange took place at that hearing:
 BY THE COURT: You understand that the Court would be empowered to sentence you, if he chose, had you gone to trial before a jury and been found guilty, of ten years under Count 1, two years under Count 2, two years under Count 3, ten years under Count 4, ten years under Count 5, ten years under Count 6, two years under Count 7, ten years under Count 8, ten years under Count 9, ten years under Count 10 and two years under Count 11?
 MR. HUBBLE: Yes.
 BY THE COURT: Therefore, I take it in view of that you would be subjected to a total penalty, if you had gone to trial and been convicted, possible penalty of 78 years in the penitentiary and $110,000 fine if the Court wanted to impose it?
 MR. HUBBLE: Yes.
 BY THE COURT: And, therefore, an agreement that gives you a term of twelve years in the penitentiary, I take it, is satisfactory?
 MR. HUBBLE: Yes, sir.
 
 
 [9]
 A guilty plea does not waive subsequent objection to an indictment for failure to allege a necessary element of the offense charged, but does waive defects in the form of the allegations. See United States v. Di Fonzo, 603 F.2d 1260, 1263 (7th Cir. 1979), cert. denied, 444 U.S. 1018 (1980); Steffler v. United States, 143 F.2d 772 (7th Cir.), cert. denied, 323 U.S. 746 (1944); Caballero v. Hudspeth, 36 F. Supp. 905 (D. Kan. 1941). In this case, although a nexus to interstate commerce is not alleged in the counts charging violations of Sec. 1202(a)(1), the Secs. 5861 and 844(d) counts charging transportation of the molotov cocktail and pipe bomb allege transportation in interstate commerce
 
 
 [10]
 While the two preceding claims might be inferred from defendant's initial pro se Sec. 2255 motion, they are not asserted in his brief on appeal. Although it is well-established that pro se filings should be read liberally, his brief to this court was filed by appointed counsel. To the extent that the above issues may have been presented to the District Court, but have not been raised on appeal, they may be deemed to have been abandoned. See Hobbs v. Blackburn, 752 F.2d 1079, 1083 (5th Cir. 1985); Williford v. Estelle, 672 F.2d 552, 553 (5th Cir.), cert. denied, 459 U.S. 856 (1982)