UNITED STATES of America, Plaintiff–Appellee,

v.

David B. BARBER, Defendant–Appellant.

Nos. 88–2402, 88–2912.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 17, 1989.

Decided July 14, 1989.

Rehearing and Rehearing En Banc Denied Oct. 18, 1989.

Michael B. Metnick, Metnick & Barewin, Diana N. Cherry, Springfield, Ill., for David B. Barber.

David E. Risley, Office of the U.S. Atty., Springfield, Ill., for U.S.

Before EASTERBROOK, RIPPLE, and MANION, Circuit Judges.

RIPPLE, Circuit Judge.

David B. Barber appeals two judgments of the district court. His first appeal is from the district court's denial of a writ of error coram nobis to vacate a prior conviction for mail fraud; his second stems from the district court's ruling, in an unrelated proceeding, to revoke Mr. Barber's probation for three bankruptcy fraud convictions on the grounds that the defendant, while on probation, had made false statements to the district court and endeavored corruptly to influence officers of the court and the due administration of justice. The two appeals were consolidated; we now affirm both judgments of the district court.

## I

## BACKGROUND

In late March 1982, Mark McFarland retained the defendant, former Springfield attorney David B. Barber, for representation in various civil, criminal, and bankruptcy matters. Before the bankruptcy court, Mr. Barber refused to disclose, and indeed actively concealed, a number of McFarland's assets. Lawyer and client had an unusual arrangement with respect to the payment of attorney's fees: Mr. Barber and McFarland agreed to plan the arson of several properties belonging to McFarland and to use the insurance proceeds to pay Mr. Barber.

McFarland, in the meantime, began to cooperate with law enforcement authorities, effectively precluding the scheme from ever attaining its goal. However, he continued to feign complicity with Mr. Barber. In one of several recorded phone conversations, Mr. Barber stressed that the fire had to appear accidental: "It had to be a clean electrical job." R.35 at 14. By mid-September, arrangements for the arson were complete. McFarland provided Mr. Barber with the insurance policies; Mr. Barber recommended the purchase of replacement protection, and he himself paid the additional premium. Finally, Mr. Barber drafted and mailed a promissory note to L.A. Jackson, a relative of McFarland, who was to act as the "torch."

The grand jury returned a twelve-count indictment against Mr. Barber, detailing incidents of mail and bankruptcy fraud. R.1. On June 10, 1983, Mr. Barber pleaded guilty to one count of mail fraud involving an arson-for-profit scheme, in violation of 18 U.S.C. § 1341, and three counts of fraud on a bankruptcy court, in violation of 18

U.S.C. § 152. R.33. On September 6, 1983, the district court sentenced the defendant to serve eighteen months' imprisonment on the mail fraud count, to be followed by concurrent sentences of five years' probation on the bankruptcy fraud counts. R.42. The defendant was also fined $15,000.

Mr. Barber served thirteen months on the mail fraud conviction and was released to begin his five years of probation on the bankruptcy fraud charges. In August 1986, upon learning that McFarland was about to be sentenced for a conviction on an unrelated fraud, Mr. Barber wrote several letters to the United States Attorney's Office and the district judge presiding at McFarland's sentencing. In those letters, he urged that McFarland receive the stiffest possible sentence. These letters were written on fraudulently acquired stationery of local businesses and bore forged signatures of the owners. R.60. The letters claimed that the owners had been victims of McFarland's fraud. After some inquiry into the veracity of these letters and the discovery of Mr. Barber's fingerprints thereon, the defendant's probation officer filed a petition to revoke his probation on the bankruptcy fraud counts. The petition submitted that Mr. Barber's conduct violated two federal statutes, and thus probation should be revoked: Mr. Barber (1) made false statements to a district court and the

United States Attorney's Office, in violation of 18 U.S.C. § 1001, and (2) corruptly endeavored to influence an officer of the court in the discharge of his duty and the due administration of justice, in violation of 18 U.S.C. § 1503. R.60.

While the probation revocation was pending, Mr. Barber filed a motion to vacate his conviction for mail fraud, based on the Supreme Court's decision in *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). This motion was denied in June 1988. In September, the district court revoked Mr. Barber's probation on the bankruptcy counts and sentenced him to concurrent five-year sentences. R.86.

II

ANALYSIS

A. Vacation of Mail Fraud Conviction

In Appeal No. 88–2402, Mr. Barber submits that the district court should have issued a writ of error coram nobis vacating his conviction for mail fraud (18 U.S.C. § 1341) on the ground that the Supreme Court decision in *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), invalidated his underlying indictment.[1] He applies for this form of collateral relief because, at the time of his application, he no longer satisfied the

---

1. Mr. Barber pleaded guilty to violating 18 U.S.C. § 1341 as alleged in Count IV of his indictment. That Count reads:

    The Grand Jury further charges:
    1. The Grand Jury realleges and incorporates by reference paragraphs 1 through 22 of Count 1 of this indictment.
    2. On or about September 17, 1982, at Springfield, in the Central District of Illinois,
    DAVID B. BARBER,
    Defendant herein, for the purpose of executing the aforesaid scheme to defraud, and attempting to do so, did knowingly cause to be placed in an authorized depository for mail matter an envelope containing a promissory note, dated September 16, 1982, in the amount of $1,000.00, addressed to:
    Mr. L.A. Jackson
    915 Cox
    Jacksonville, IL 62650

    to be sent and delivered by the United States Postal Service, according to the directions thereon; in violation to Title 18, United States Code, Section 1341.
    R.1 at 8–9.
    Paragraph 5 of Count I, incorporated by reference into Count IV, alleged that:
    It was a part of the scheme to defraud that illegal means would be used to secure money for payment to DAVID B. BARBER in return for his representation of MARK A. MC FARLAND. These illegal means were to include the filing of a false and fraudulent bankruptcy petition on behalf of MARK A. MC FARLAND, the hiding and concealment of assets of MARK A. MC FARLAND, the fraudulent transfer of assets to DAVID B. BARBER, *and the fraudulent collection and receipt of insurance proceeds resulting from the intentional burning and arson of properties of MARK A. MC FARLAND.*

requirements for habeas corpus.[2]

This court recently reviewed the requirements for a writ of error coram nobis in *United States v. Keane*, 852 F.2d 199 (7th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 2109, 104 L.Ed.2d 670 (1989), and again in *United States v. Doe*, 867 F.2d 986 (7th Cir.1989). In *Keane*, the court set forth four components to the petitioner's burden. The petitioner must show that: (1) the claim could not have been raised on direct appeal; (2) the claimed error is a defect of a type that "sap[s] the proceeding of any validity"; (3) the conviction produced lingering and still extant collateral civil disabilities; and (4) the error is of a type that "would have justified relief during the term of imprisonment." 852 F.2d at 202–03.

This case can be resolved most expeditiously by focusing on the second requirement. Here, we conclude that *McNally* affords the petitioner no basis for relief. In *McNally*, the Supreme Court reversed the conviction of a former state official for mail fraud because the indictment framed the offense as a scheme to defraud the state citizens of their *intangible right* to have public servants conduct business honestly. 483 U.S. at 354, 107 S.Ct. at 2878. The Court interpreted section 1341 as being directed at "false promises and misrepresentations as to the future as well as other frauds involving money or property." *Id.* at 359, 107 S.Ct. at 2881. Because the indictment before the Court did not allege that the state was "defrauded of any money or property," *id.* at 360, 107 S.Ct. at 2882, but, rather, solely the violation of the citizens' intangible rights, the Court reversed. *See also Carpenter v. United States*, 484 U.S. 19, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987). *McNally* has been reviewed extensively by this court. *See, e.g.,* *Lombardo v. United States*, 865 F.2d 155 (7th Cir.1989); *Doe*, 867 F.2d at 988–89; *Moore v. United States*, 865 F.2d 149 (7th

Cir.1989); *United States v. Bailey*, 859 F.2d 1265 (7th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 796, 102 L.Ed.2d 787 (1989); *Keane*, 852 F.2d at 205; *Ward v. United States*, 845 F.2d 1459 (7th Cir.1988); *United States v. Eckhardt*, 843 F.2d 989 (7th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 106, 102 L.Ed.2d 81 (1988); *United States v. Gimbel*, 830 F.2d 621 (7th Cir. 1987). Our cases manifest a single principle: *McNally* holds that mail fraud convictions must be based on schemes to defraud money or property. "[T]he common thread running through 'intangible' rights cases is that they involve *rights* whose violation would ordinarily result in no concrete economic harm; that is not the case here." *Bailey*, 859 F.2d at 1276 (emphasis supplied); *see also United States v. Wellman*, 830 F.2d 1453, 1462 (7th Cir.1987).

▊ In the case before us, the rights are those of the insurance companies; if the scheme had been successful as to the burning of McFarland's property, concrete economic harm would have occurred. Nevertheless, Mr. Barber makes a novel and, in our view, strained argument in an attempt to bring his conviction within the holding of *McNally*. He argues, in essence, that he did not plead guilty to a scheme to defraud others of economic rights because the government's detection of his scheme before he brought it to fruition precluded the possibility of economic loss to the victims. It is true that the indictment does not allege an actual monetary or economic loss to any insurance company. However, it is not necessary that an indictment charging mail fraud contain such an allegation. As our colleagues on the Tenth Circuit have noted, the "offense has two elements: (1) the act of having devised or devising a scheme or artifice to defraud or attempt to defraud, and (2) use of the mails willfully to carry out an essential step of the scheme to defraud." *United States v. Aigbevbolle*,

R.1 at 2 (emphasis supplied).

2. Mr. Barber originally filed a Motion to Vacate Conviction of Mail Fraud pursuant to 28 U.S.C. § 2255 (habeas corpus), citing *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). R.70. However, because the defen-

dant had already completed his sentence on the mail fraud conviction, he did not satisfy the custody requirement for habeas corpus relief. The district court thus construed the motion as a petition for a writ of error coram nobis.

827 F.2d 664, 666 (10th Cir.1987). Therefore, it is sufficient that the indictment alleged a fraudulent scheme that had the potential, had it been successful, to have an economic impact on its victims. As the court noted in *Keane,* the mail fraud statute punishes *schemes* that have "a substantial potential to take other people's property by fraud." 852 F.2d at 205. It is not necessary "that the intended victim actually have been defrauded." *Ward v. United States,* 845 F.2d 1459, 1462 (7th Cir.1988) (citing *United States v. Dial,* 757 F.2d 163, 170 (7th Cir.), *cert. denied,* 474 U.S. 838, 106 S.Ct. 116, 88 L.Ed.2d 95 (1985)).

For the same reason, we cannot accept Mr. Barber's suggestion that he deserves relief because, once the government discovered the plot, they supplied fictitious names of properties and fictitious insurance policies on those properties thus precluding the possibility of actual monetary loss. Despite this attempt to cast his argument "in the cloth of legal impossibility," *Aigbevbolle,* 827 F.2d at 666 (footnote omitted), the essential point remains that the crime alleged was complete when the scheme was devised and the letter mailed. The fact that actual economic harm did not occur does not bring the indictment within the holding of *McNally.*

The indictment properly alleged a scheme that withstands a *McNally* analysis. Mr. Barber's mail fraud conviction is not the product of an error that "sap[ped] the proceeding of any validity." *Keane,* 852 F.2d at 202. We affirm the judgment of the district court in Appeal No. 88–2402.

### B. Revocation of Probation

We turn now to Mr. Barber's submission that the district court erred in revoking his probation for the bankruptcy fraud convictions. After receiving notice from the defendant's probation officer, the district court convened a hearing pursuant to Federal Rule of Criminal Procedure 32.1. The court found that, while free on probation, Mr. Barber mailed false letters to the district court and United States Attorney's Office in violation of 18 U.S.C. §§ 1001 (making false statements) and 1503 (attempting to influence improperly the district court and the United States Attorney's Office). *See* R.82 at 45–46; R.84 at 23. The court then sentenced him to five years' imprisonment. In reviewing a probation revocation, we look to see whether the district court abused its discretion. *See United States v. Drinkall,* 749 F.2d 20, 20–21 (8th Cir.1984); *see also Prellwitz v. Berg,* 578 F.2d 190, 193 (7th Cir.1978); *United States v. Brugger,* 549 F.2d 2, 4 (7th Cir.), *cert. denied,* 431 U.S. 919, 97 S.Ct. 2186, 53 L.Ed.2d 231 (1977). An "error of law by the district court constitutes an abuse of discretion." *Brunswick Corp. v. Jones,* 784 F.2d 271, 274 n. 2 (7th Cir.1986).

### 1. Section 1001

Section 1001 states that:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

18 U.S.C. § 1001.

According to Mr. Barber, the district court erred in finding that his letters written to the sentencing judge violated section 1001 because the letters sought to sway the court in its exercise of a "judicial function"—the sentencing of McFarland. Appellant's Br. at 22–24. He stresses this distinction in an effort to avail himself of the rule adopted in several other circuits that, regarding false representations made to federal courts, section 1001 is violated only when the statements are made to the court in its "administrative/housekeeping" rather than "judicial" function. *See, e.g., United States v. Mayer,* 775 F.2d 1387, 1388–90 (9th Cir.1985) (per curiam); *United States v. Lawson,* 809 F.2d 1514, 1519 (11th Cir.1987); *United States v. Abrahams,* 604 F.2d 386, 393 (5th Cir.1979); *United States*

*v. Erhardt*, 381 F.2d 173, 175 (6th Cir.1967) (per curiam). Under this rule, false statements made to the federal courts in their adjudicative function are considered appropriate for prosecution under the perjury statutes, 18 U.S.C. §§ 1621–23, not section 1001. *See Mayer*, 775 F.2d at 1389. These cases all draw on dicta in *Morgan v. United States*, 309 F.2d 234 (D.C.Cir.1962), *cert. denied*, 373 U.S. 917, 83 S.Ct. 1306, 10 L.Ed.2d 416 (1963), in which Judge Bazelon, speaking for the the District of Columbia Circuit, noted that:

> We are certain that neither Congress nor the Supreme Court intended the statute to include traditional *trial tactics* within the statutory terms "conceals or covers up." We hold only, on the authority of the Supreme Court construction, that the statute does apply to the type of action with which appellant was charged, action which essentially involved the "administrative" or "housekeeping" functions, not the "judicial" machinery of the court.

309 F.2d at 237 (emphasis supplied).

We share the misgivings expressed by our brother, Senior Circuit Judge Fairchild, that this judicially created exception to the plain meaning of the statute, limited in *Morgan* to "traditional trial tactics," "has somehow flowered into the broad exception now being recognized, yet virtually none of the significant decisions has really defined the exception nor expounded a rationale." *United States v. Mayer*, 775 F.2d 1387, 1392 (9th Cir.1985) (Fairchild, Senior Circuit Judge, sitting by designation, concurring). We also note that adherence to this exception has created some uncomfortable conceptual problems. *See, e.g., United States v. Powell*, 708 F.2d 455 (9th Cir.1983), *rev'd on other grounds*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984) (applying the statute to a false statement in an application for leave to proceed in forma pauperis and for the appointment of counsel on the ground that it involved a housekeeping function); *United States v. Gonzalez–Mares*, 752 F.2d 1485 (9th Cir.), *cert. denied*, 473 U.S. 913, 105 S.Ct. 3540, 87 L.Ed.2d 663 (1985) (permitting prosecution for false statement to a probation officer); *United States v. Plascencia–Orozco*, 768 F.2d 1074 (9th Cir.1985) (upholding a conviction of an individual who orally gave a false name to the magistrate at his arraignment).

■ Whatever may be the legitimacy of this judicially created exception when limited to trial proceedings, we can note, with some relief, that it has yet to establish a foothold in our circuit. Nor is it necessary for us to confront squarely this so-called "trial tactics" exception here. Unlike the defendants in those cases in which section 1001 violations have depended on a distinction drawn between the various roles of a federal court, Mr. Barber did not make the false statements in *his own* proceeding. Rather, Mr. Barber sought to influence *another* defendant's criminal proceeding. Mr. Barber's false letters were not a trial tactic used in his defense. Moreover, the particular function at issue here—the presentation of letters to a federal judge with respect to the sentencing of a third party—is a unique setting and one ill-suited to regulation through the perjury statutes. In short, the present situation implicates none of the policy concerns present in *Morgan*. Here, section 1001 was an appropriate basis for dealing with Mr. Barber's false statements submitted to the district court regarding McFarland's sentencing.

■ In addition, we approve the district court's determination that the letters mailed to the United States Attorney's Office (the Office) also violated section 1001. Mr. Barber submits that this finding cannot stand because McFarland's sentencing was not a matter within the "jurisdiction" of the Office. *See* Appellant's Br. at 25; 18 U.S.C. § 1001. However, as this court held in *United States v. DiFonzo*, 603 F.2d 1260 (7th Cir.1979), *cert. denied*, 444 U.S. 1018, 100 S.Ct. 672, 62 L.Ed.2d 648 (1980), section 1001's "jurisdiction" requirement is satisfied when there is "a sufficient nexus between the subject matter of the [agency] investigation which led to defendant's submission of false documents to the [agency] and the [agency's] ... authority." 603 F.2d at 1264. *See also United States v. Rodgers*, 466 U.S. 475, 479, 104 S.Ct. 1942,

1946, 80 L.Ed.2d 492 (1984) (Section 1001's "phrase 'within the jurisdiction' merely differentiates the official, authorized functions of an agency or department from matters peripheral to the business of that body."). It is part of the high responsibility of the United States Attorney to submit sentencing recommendations to the district court as part of its prosecution of a defendant. Thus, under the principles espoused in *Rodgers* and *DiFonzo*, the sentencing recommendations were clearly within the Office's jurisdiction.

### 2. *Section 1503*

Section 1503 states that:

Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States commissioner or other committing magistrate, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, commissioner, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

3. These provisions are now among the factors for the district court to consider in sentencing a defendant to a sentence within the range established by the sentencing guidelines. *See* 18 U.S.C. § 3553(b).

4. In the probation revocation hearing, the district court tentatively ruled in Mr. Barber's favor, as it was unsure that the submission of false letters was a violation of section 1503. R.82 at 39–40. The court, however, explicitly

18 U.S.C. § 1503. Mr. Barber submits that the district court erred in concluding that his forged letters satisfied the section 1503 requirement of influencing, obstructing, or impeding the due administration of justice on the ground that, under the sentencing statute, the letters could not have had the effect of impeding McFarland's sentencing. *See* Appellant's Br. at 27–31.

■ We cannot accept this submission. The false letters establish that the defendant, in mailing the letters to the sentencing judge, acted "corruptly." *See United States v. Machi,* 811 F.2d 991, 996 (7th Cir.1987) (defining "corruptly" to mean "with 'a wrongful design to acquire pecuniary or other advantage' ... [and] that the act must be done with the purpose of obstructing justice") (quoting *United States v. Rasheed,* 663 F.2d 843, 852 (9th Cir.1981) (quoting Black's Law Dictionary 414 (4th ed. 1968)), *cert. denied,* 454 U.S. 1157, 102 S.Ct. 1031, 71 L.Ed.2d 315 (1982)). They also constituted an "endeavor" to influence McFarland's sentencing. *See Osborn v. United States,* 385 U.S. 323, 332–33, 87 S.Ct. 429, 434–35, 17 L.Ed.2d 394 (1966) (rejecting impossibility defense to endeavor requirement of section 1503). In sentencing criminal defendants, the district court specifically is authorized to consider the need "to provide just punishment for the offense," 18 U.S.C. § 3553(a)(2)(A), and "the need to provide restitution to any victims of the offense," *id.* at § 3553(a)(7).[3] Accordingly, letters from a defendant's victims could properly be considered by the district court; Mr. Barber's false letters, had they not been found out, could have altered the district court's sentencing of McFarland.

The district court correctly determined that Mr. Barber violated section 1503 while on probation.[4] The district court certainly

stated to the government that "[i]f you can find some additional authority to present to the court, I will reconsider. Because of the situation here, I would have the opportunity to reconsider. That is no problem." *Id.* at 40. The government did indeed present additional authority, and the district court reconsidered its earlier ruling and revoked probation also on grounds of a section 1503 violation.

Mr. Barber now submits that the district court's reconsideration and reversal of its initial

did not abuse its discretion in revoking the defendant's probation and sentencing him to five years' imprisonment on the bankruptcy charges. The judgment of the district court in Appeal No. 88–2912 is affirmed.

## CONCLUSION

The district court did not abuse its discretion in denying David Barber's application for a writ of error coram nobis to vacate his conviction for mail fraud. Similarly, the district court did not abuse its discretion in revoking the defendant's probation upon determining that he had violated the terms of his release. Accordingly, both judgments of the district court are affirmed.

AFFIRMED.

decision constitutes a violation of the double jeopardy clause of the Constitution. *See* Appellant's Br. at 32–34. This argument is meritless. In *Serfass v. United States,* 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975), the Court stated that jeopardy does not attach "until a defendant is 'put to trial before the trier of facts, whether the trier be a jury or a judge.'" 420 U.S. at 388, 95 S.Ct. at 1062 (quoting *United States v. Jorn,* 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971)). Here, Mr. Barber was never put to trial on a violation of section 1503. *See also Thompson v. Reivitz,* 746 F.2d 397, 399–400 (7th Cir.1984), *cert. denied,* 471 U.S. 1103, 105 S.Ct. 2332, 85 L.Ed.2d 849 (1985).