UNITED STATES of America, Plaintiff–Appellee,

v.

Bernard J. HATCH, Jr., Defendant–Appellant.

UNITED STATES of America, Plaintiff–Appellee,

v.

Kenneth Larry AVERITT, Defendant–Appellant.

Nos. 90–4184, 90–4286.

United States Court of Appeals, Fifth Circuit.

Feb. 28, 1991.

388

Michael J. Domingue, Baton Rouge, La.,
Frank T. Salter, Jr., Salter, Streete & Hale,
Lake Charles, La., for Bernard J. Hatch,
Jr.

Edward J. Castaing, Jr., New Orleans, La. (Court-appointed), for Kenneth Larry Averitt.

Josette L. Cassiere, William J. Flanigan, Asst. U.S. Attys., and Joseph S. Cage, Jr., U.S. Atty., Shreveport, La., for U.S.

Before JOHNSON, WILLIAMS, and HIGGINBOTHAM, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

A federal grand jury returned a fourteen count indictment against appellant Kenneth Larry Averitt, Sheriff of Union Parish, Louisiana. The first two counts also indicted appellant Bernard J. Hatch, Jr., who allegedly had been hired by the sheriff to consult on the construction of a new jail. They were both charged with mail fraud, in violation of 18 U.S.C. § 1341, and conspiracy to commit mail fraud, in violation of 18 U.S.C. § 371. A jury found Hatch guilty on both of the counts, one count of mail fraud and one count of conspiracy to commit mail fraud. The judge sentenced him to 21 months imprisonment followed by three years of supervised release for the mail fraud conviction. He also ordered him to pay a special assessment of $50. The judge imposed the same sentence for the conspiracy conviction, to be served concurrently with the mail fraud sentence. In a plea bargain, Averitt pleaded guilty to one count of mail fraud. The district court sentenced him to 24 months imprisonment followed by a term of three years supervised release. Averitt also was required to pay a special assessment of $50. The two cases were consolidated for appeal.

Hatch provides us with an imaginative array of reasons to reverse the jury's verdict. None of his arguments have merit. Averitt asks us to vacate his sentence and remand for resentencing because of the judge's upward departure from the applicable Sentencing Guidelines range. Finding adequate support for the upward departure, we affirm the sentence ordered by the district court.

*Facts*

In Louisiana, the Union Parish Sheriff's Office ("UPSO") finances its day to day operations with money contained in its general fund. Each sheriff has legal possession of the general fund for his office and is authorized to pay the expenses incurred in performing his duties out of this fund. La.Rev.Stat.Ann. § 33:1422. The convictions of Averitt and Hatch stem from Averitt's unauthorized and illegal use of this general fund.

In developing the indictments of Averitt, there was evidence presented to the grand jury that he used his general fund to purchase items for his personal use. On one occasion, Averitt submitted an invoice indicating the purchase of ten pairs of boots for his deputies. The actual items purchased included a felt hat, a bit, reins, blankets, and other horseback riding accessories. On other occasions he charged his office for clothing, tires, hunting supplies, and motel rooms. None of these items were necessary for the performance of his duties as sheriff of Union Parish. Averitt effectuated payment for all of these items by having his Chief Civil Deputy mail a check to the provider of the service or retailer of the article.

Averitt also authorized payments from his general fund to appellant Hatch. Averitt met Hatch in 1984 through their mutual affiliation with the Louisiana Sheriff's Association. At all relevant times, Hatch was employed as a consultant by the Risk Management Group. The Louisiana Sheriff's Association was self-insured, and Risk Management consulted with the Association on how to decrease the Association's liability risks. Hatch consulted mainly in the area of managing jails and jail personnel. Hatch was allowed to contract for individual consulting jobs, as long as those jobs did not interfere with his work for Risk Management and the Association.

In 1986, the Union Parish Police Jury entered a contract with William R. Baker and Associates for the construction of a new maximum security jail in Union Parish.

Construction of the jail began in January 1988. In May 1988, Averitt ordered his Chief Civil Deputy to send a check to Hatch in the amount of $25,000. Averitt's Chief Civil Deputy testified that she sent the $25,000 check to Hatch by mail on May 13, 1988. Then later, before May 1989, Averitt authorized three more payments from the general fund to Hatch. Averitt's Chief Civil Deputy testified that she also sent at least one of the other three payments to Hatch by mail. Hatch received a total of $43,750 from the Union Parish Sheriff's Office.

An investigation of Averitt's activities questioned these payments to Hatch. Hatch and Averitt claimed that the payments were made pursuant to a consulting contract. As a recognized expert on jails, Hatch was allegedly hired by Averitt to advise him on the construction of the new Union Parish jail. The sheriff and Hatch claimed to have entered into an oral contract for this purpose in May 1987, and to have memorialized and renewed the arrangement for a second year in May 1988. Hatch and Averitt produced a written contract to verify the consulting relationship. Although the signature line was dated May 15, 1987, the parties later admitted that the contract had been backdated and was not actually signed until May 1988.

A federal grand jury returned a fourteen count indictment against Averitt. Counts three through fourteen included charges of mail fraud for his unauthorized use of money from the UPSO general fund. Rather than face trial on all fourteen counts, Averitt chose to plead guilty to one count of mail fraud not connected to the alleged consulting arrangement with Hatch. He now contests the sentence he received as a result of the plea bargain.

The first two counts of the indictment charged Hatch as well as Averitt, and involved the alleged consulting arrangement. Averitt and Hatch were charged with using the mails to facilitate a scheme to defraud the UPSO through payments for unperformed consulting services. The government contended that Averitt authorized payment to Hatch for services that Hatch did not actually provide. Hatch elected to go to trial. The government's evidence tended to prove that Hatch could not justify the payments he received, and that Averitt received a kickback from the payments he made to Hatch. Hatch's attempts to provide evidence of the work he performed amounted to vague descriptions of meetings with Averitt and extensive hours spent "thinking" about the problems and needs of the new Union Parish jail. The jury rejected his attempts to justify his alleged contract with Averitt, and found him guilty of mail fraud and conspiracy to commit mail fraud. Hatch appeals the jury verdict on several grounds.

### Hatch

We consider first the Hatch challenge to the jury verdict because it is a broad based attack upon the entire trial process. Hatch asserts reversible error in almost every aspect of the proceedings leading to his convictions for mail fraud and conspiracy to commit mail fraud. He contends that his convictions violate the Federal Constitution, federal procedures, and even Louisiana law. After a thorough review of the entire record, we affirm the jury's verdict.

### I.

 Hatch asked the district court to dismiss the claims against him on the basis of a defective indictment. He urges that the district court erred when it denied his Motion to Dismiss. Hatch argued that his indictment was defective because it alleged that he had schemed with Averitt to defraud the UPSO of money contained in its general fund. But he asserts that under Louisiana law the UPSO has no legal identity. The sheriff has control of all funds available to operate his office. Since the UPSO is not a legal entity, Hatch claims that it is impossible to defraud the UPSO. He implies that the indictment violated his Fifth Amendment due process rights by hindering his ability to prepare a defense.

An indictment is sufficient if it contains the elements of the offense charged, informs the defendant of the charges, and enables the defendant to plead acquittal or

conviction and avoid future prosecutions for the same offense. *United States v. Manotas–Mejia*, 824 F.2d 360, 365 (5th Cir.), *cert. denied*, 484 U.S. 957, 108 S.Ct. 354, 98 L.Ed.2d 379 (1987). Hatch's indictment meets this standard. Naming the UPSO as the party defrauded did not prevent Hatch from ascertaining the charges against him. We see no possibility that the indictment could have hampered his defense. The indictment sufficiently described the conduct underlying the charges brought by the government to enable Hatch to prepare his defense. The district court correctly denied his Motion to Dismiss.

## II.

■ In a related argument, Hatch claims that the mail fraud statute has no application to this case because the government failed to identify a legally cognizable victim of the alleged scheme to defraud. Looking to Louisiana law, Hatch determined that the mail fraud statute requires a victim capable of being deceived. Repeating his defective indictment argument, he contends that the UPSO cannot be the victim of mail fraud. The only party capable of being defrauded was Averitt, the legal "owner" of the UPSO general fund. Since Averitt allegedly was part of the scheme to defraud, Hatch urges that he cannot be a victim of the fraud. Without a legally cognizable victim, Hatch concludes that his conviction under the mail fraud statute was improper.

There is no escape by Hatch from his conviction under the mail fraud statute as a result of the government's identifying the UPSO as the party defrauded. Hatch's arguments must fail because federal law, not Louisiana law, controls application of the mail fraud statute. The essential elements of mail fraud are: (1) a scheme to defraud, (2) involving the use of the mail, (3) for the purpose of executing the scheme. *United States v. McClelland*, 868 F.2d 704, 706 (5th Cir.1989); *United States v. Gordon*, 780 F.2d 1165, 1170 (5th Cir. 1986). The focus of the mail fraud statute is upon the use of the mail to further a scheme to defraud, not upon any particular kind of victim. Our recent opinion in *United States v. Moody*, 903 F.2d 321 (5th Cir. 1990) demonstrates that failure to define precisely the victim of the scheme to defraud does not prevent conviction under the mail fraud statute. In *Moody*, the trustee of a charitable trust was charged with mail fraud for scheming to defraud the trust. In Texas, a charitable trust has no legal identity. The trustee has legal title to the funds in the trust. Tex.Prop.Code Ann. §§ 111.001 *et seq.* Although we reversed the decision on other grounds, we held that there was sufficient evidence to convict the trustee of mail fraud on some of the counts included in the indictment. Naming the charitable trust as the party defrauded did not prevent application of the mail fraud statute to the actions of the trustee in *Moody*. By analogy, the mail fraud statute encompasses Hatch's conduct in this case.

In any event, Hatch's assertion that there was no victim of his fraudulent activity is ingenuous. His actions defrauded the citizens of Union Parish of money they provided for the operation of the UPSO. He received a portion of the fruits of his crime by mail. The mail fraud statute applies inescapably to this conduct. We hold that naming the UPSO as the victim of the scheme to defraud did not render Hatch's convictions invalid.

## III.

■ Alternatively, Hatch contends that the evidence is insufficient to support the jury verdict on either the conspiracy count or the mail fraud count. In reviewing the sufficiency of the evidence, we view the evidence and any inferences that may be drawn from it in the light most favorable to the verdict. *United States v. Onick*, 889 F.2d 1425, 1428 (5th Cir.1990). Our review does not encompass weighing the evidence or judging the credibility of the witnesses. *United States v. Davis*, 752 F.2d 963, 968 (5th Cir.1985). We must affirm the conviction if a rational jury could have found the essential elements of the crimes beyond a reasonable doubt. *United*

*States v. Aguirre Aguirre,* 716 F.2d 293, 297 (5th Cir.1983).

■ A jury found Hatch guilty of mail fraud, in violation of 18 U.S.C. § 1341, and of conspiracy to commit mail fraud, in violation of 18 U.S.C. § 371. We stated the elements of mail fraud in the previous section. To prove Hatch guilty of the other count, conspiracy to commit mail fraud, the government had to prove beyond a reasonable doubt: (1) an agreement between two or more persons, one of whom was Hatch, (2) to commit mail fraud, and (3) an overt act committed by one of the conspirators in furtherance of the agreement. *United States v. Schmick,* 904 F.2d 936, 941 (5th Cir.1990). The government had to establish that a conspiracy existed, that Hatch knew of the conspiracy, and that he voluntarily became part of it. *United States v. Yamin,* 868 F.2d 130, 133 (5th Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 3258, 106 L.Ed.2d 603 (1989). Circumstantial evidence is sufficient to prove the existence of a conspiracy, and an agreement may be inferred from concert of action among the alleged participants. *United States v. Espinoza–Seanez,* 862 F.2d 526, 537 (5th Cir. 1988).

■ The evidence offered by the government proved that Hatch received money from the UPSO operating fund for consulting work that he neither performed nor ever intended to perform. Hatch claims to have consulted with Averitt beginning in May 1987 in connection with the construction of a new jail in Union Parish. In exchange for his expertise, Hatch was to receive compensation in the amount of $25,000 a year.

The government produced evidence questioning the existence of a consulting arrangement. The architect employed to design the jail, the project manager from the jail construction site, and Averitt's Chief Civil Deputy all testified that they were not aware of Averitt's alleged agreement with Hatch prior to May 1988. Their testimony also indicated that they would have known if a consultant was actually employed during that first year.

Hatch introduced the written contract dated May 15, 1987 as evidence to prove the existence of the relationship. He admitted the he had not executed this contract with Averitt until May 1988, but argued that the writing served to memorialize their prior oral consulting agreement. Although there is nothing wrong with operating under an oral agreement, or with memorializing an already performed verbal agreement, the evidence certainly allowed the inference that Hatch and Averitt executed the document and backdated the signature line of the agreement in an attempt to make it appear that the parties had entered into the contract on May 15, 1987.

The government further stressed the lack of evidence that Hatch had performed any consulting work for Averitt during the first year of the contract. A document offered by Hatch entitled "Synopsis of Contract Work" allegedly accounted for over 600 hours of work directly attributable to his agreement with Averitt. When asked specific questions about these 600 hours, Hatch provided extremely vague answers to the jury. Essentially, he claimed that approximately 180 of the 600 hours involved meetings with Averitt, while the remaining time was spent in his personal contemplation of potential problems of the new Union Parish jail. When asked to report the suggestions or advice he gave to Averitt over the course of the year, Hatch could offer few examples.

Finally, the government exhibits showed that Hatch deposited into his bank account only $19,000 of the $25,000 he received as a fee for the first year of the alleged agreement. He retained $6,000 in cash. On the same day that he made this deposit and withheld the $6,000, he attended the Louisiana Sheriff's Association conference in Baton Rouge. Government exhibits placed Averitt at the same conference. The obvious inference the jury could make from this evidence is that Averitt received a portion of the $25,000 payment in the form of a kickback.

We hold that the government's evidence was sufficient to support the jury's verdict on both the mail fraud count and the con-

spiracy count. The evidence allowed the jury to conclude that Hatch and Averitt devised a scheme to defraud Union Parish by procuring a $25,000 payment for a mythical consulting arrangement. Hatch attempted to prove that a valid consulting relationship existed, but the jury was free to find a lack of verity in his testimony and to accept the version presented by the government. Hatch stipulated that he received the $25,000 check in the mail. The government's evidence satisfied all of the elements of both mail fraud and conspiracy to commit mail fraud.

## IV.

■ Hatch next argues that the district judge erred by allowing the government to admit a bank statement and a hotel receipt in evidence. The bank statement showed that Hatch was payee of a check for $25,-000 from the UPSO. On May 17, 1988, he deposited only $19,000 of the check into his account, retaining $6,000 in cash. The hotel receipt was from a Baton Rouge hotel showing that Averitt checked into the hotel on May 17, 1988. Hatch claims that these two exhibits were inadmissible as evidence under Fed.R.Evid. 404(b).

The Federal Rules of Evidence provide that generally all relevant evidence is admissible. Fed.R.Evid. 402. Relevant evidence is defined as any evidence tending to make the existence of any fact of consequence more or less probable. Fed.R.Evid. 401. The indictment charged Hatch with mail fraud and conspiracy to commit mail fraud. The government offered these two items of evidence because they tended to prove that (1) Averitt and Hatch both attended the Louisiana Sheriff's Association conference in Baton Rouge on or about May 17, 1988, and (2) that Hatch carried $6000 in cash to the conference out of the consulting fees he received from the UPSO. This circumstantial evidence allowed the jury to infer that Hatch gave all or part of the $6000 to Averitt as a kickback. Certainly evidence implying that Hatch gave Averitt a kickback out of the alleged consulting fee is relevant to the government's

case that there was a scheme to defraud the UPSO.

Hatch's argument that Fed.R.Evid. 404(b) prohibits introduction of these exhibits is misdirected. Rule 404(b) has no application to this case. This circumstantial evidence relates directly to proof of a scheme to defraud. It is not evidence of another wrongful act for the purpose of showing that Hatch acted in conformity with his traits of character and committed the charged offense. Hatch contends that the exhibits allowed the jury to infer that he gave Averitt a kickback. He is correct. He is incorrect in arguing that admission of this circumstantial evidence was improper. A kickback to Averitt would be part of the overall scheme to defraud Union Parish, not an extrinsic act contemplated by Rule 404(b). But in any event, proof of a kickback was not necessary to the conviction for mail fraud. We affirm the judge's evidentiary decisions.

## V.

Hatch asks us to reverse his convictions on the basis of two separate claims of prosecutorial misconduct. The first claim involves statements made by the government during closing argument. Hatch contends that the government impermissibly commented on the evidence, referred to facts not in the record, and injected his personal beliefs into the proceedings. He argues that these comments violated his Fifth Amendment due process rights.

■ Hatch did not object to the government's closing argument at trial. Since no objection was made, we review the prosecution's statements only for plain error. *United States v. Zabaneh*, 837 F.2d 1249, 1260 (5th Cir.1988). We can reverse only if the government's closing arguments seriously affected the fairness or integrity of the proceedings and resulted in a miscarriage of justice. *United States v. Lopez*, 923 F.2d 47 (5th Cir.1991). To determine whether the prosecutor's comments constituted a miscarriage of justice, we must consider them in the context of the entire trial. *United States v. Chase*, 838 F.2d 743, 749 (5th Cir.), *cert. denied*, 486 U.S.

1035, 108 S.Ct. 2022, 100 L.Ed.2d 609 (1988).

Even under a less deferential standard of review than plain error, we would find no prosecutorial misconduct in the government's closing argument. Our review of the record indicates that the government's attorney did nothing more than state reasonable inferences that the jury could draw from the presented evidence. He did not attempt to imply that evidence not introduced at trial supported his position. The government's attorney simply alluded to the evidence presented at trial and advocated a conclusion based on this evidence. His closing argument provides no basis for reversing the jury's verdict.

In his second claim of prosecutorial misconduct Hatch alleges that the government violated his Fifth Amendment due process rights and his Sixth Amendment right to compulsory process by coercing Averitt not to testify at his trial. Hatch claims that the government prevented Averitt from providing exculpatory testimony at Hatch's trial by threatening to revoke its plea agreement with Averitt. If the government did in fact prevent Averitt from testifying at Hatch's trial, he has a valid argument under both the Fifth and Sixth Amendments to urge reversal of his convictions. *See Washington v. State of Texas*, 388 U.S. 14, 18–19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1968); *Brady v. State of Maryland*, 373 U.S. 83, 87–88, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963).

■ Hatch cannot prevail on this argument because there is a dearth of any evidence in the record to support his claim. Nothing in the record indicates that the government prevented Averitt from testifying at Hatch's trial. The only support for this allegation appears in a hearsay affidavit included in the appendix to Hatch's brief. That affidavit was given by Kent Andrews on June 6, 1990, well after Hatch's trial in the district court. Andrews, a friend of Averitt, alleges in the affidavit that Averitt did not testify due to government coercion.

Prior to oral argument in this case, the government submitted a Motion to Strike the affidavit from the record. The government argues that the affidavit is not properly part of our record for review. We carried that motion with the case, and now grant the government's Motion to Strike. Fed.R.App.Proc. 10(a) allows only "original papers and exhibits filed in the district court, the transcript of the proceedings, ... and a certified copy of the docket entries" to be made part of. the record for appeal to this court. The Andrews affidavit was not considered by the district court and is not properly included in the record on appeal. Lacking any evidence to support this charge of prosecutorial misconduct, we deny Hatch's claim that the government prevented Averitt from testifying.

## VI.

■ Hatch argues that the district court inadequately and improperly instructed the jury. We will reverse a conviction on the grounds of improper jury instructions only if the instructions taken as a whole do not correctly reflect the issues and the law. *United States v. Casto*, 889 F.2d 562, 566 (5th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 1164, 107 L.Ed.2d 1067 (1989). Similarly, failure to include an instruction requested by the defendant warrants reversal only if absence of that instruction results in a charge not adequately addressing the issues and the law of the case. *United States v. Molina–Uribe*, 853 F.2d 1193, 1205 (5th Cir.), *cert. denied,* 489 U.S. 1022, 109 S.Ct. 1145, 103 L.Ed.2d 205 (1988).

Hatch first claims that the jury instructions are improper because they name the UPSO as the party allegedly defrauded. He basically repeats his defective indictment argument. We need not address that claim again. Charging the jury with instructions naming the UPSO as the defrauded party did not taint the jury instructions.

■ The district judge refused to include two specific instructions requested by

Hatch.[1] Hatch wanted the charge to instruct the jury that a Louisiana Sheriff could enter into an oral contract and subsequently put the contract in writing. Instead, the judge chose to instruct the jury that in Louisiana it is acceptable for a party to memorialize an oral contract after performance of the contract. The judge refused to state specifically that a *sheriff* could contract in this method because Hatch failed to provide authority for that proposition. Hatch also asked the judge to instruct the jury that a party can fail to fulfill contract expectations without committing fraud. In other words, he wanted the court to tell the jury that evidence of a breach of contract does not prove fraud. The judge viewed this requested instruction as an unwarranted comment on the evidence, and refused to include it in the charge.

We hold that the district court's refusal to include Hatch's requested instructions was not reversible error. Our review of the instructions indicate that the judge adequately charged the jury as to the elements of both conspiracy and mail fraud. He also carefully and fully defined these elements to enable the jury to assess properly the evidence offered in the case.

## VII.

■ Hatch claims that his conviction violated the Fifth and Tenth Amendments of the United States Constitution. We have already addressed part of Hatch's Fifth Amendment due process claim in his argument regarding the indictment. Hatch further alleges that the government violated the Fifth Amendment by failing to offer direct evidence that Hatch did not perform consulting work. He believes that the government's use of circumstantial evidence impaired his due process rights by shifting the burden of proof to require him to prove that he did do the work. Hatch's argument is meritless. Circumstantial evidence is sufficient to support a criminal conviction and does not shift the burden of proof. Even if the government relied upon circumstantial evidence, it still had to prove all of the elements of mail fraud and conspiracy to commit mail fraud beyond a reasonable doubt, and it did so.

■ Hatch has also failed to show a violation of the Tenth Amendment. He argues that the government's enforcement of the mail fraud statute in this case infringes upon the federalism guarantee contained in that Amendment. Hatch claims that the government used the mail fraud statute to regulate the methods and operations of a Louisiana Sheriff. The claim is frivolous. The government's prosecution of Hatch for violating a valid federal criminal statute raises no Tenth Amendment concerns.

### Averitt

Averitt pleaded guilty to one count of mail fraud in exchange for dismissal of the other thirteen counts contained in the indictment. The Presentence Report tabulated an offense level of eleven, and a criminal history category of I. The Sentencing Guidelines provide a range of 8–14 months imprisonment for this offense level and criminal history category. The district judge departed from the Guidelines and sentenced him to 24 months imprisonment followed by three years supervised release. Averitt argues that this upward departure was not justified. Finding the proffered reasons for the upward departure acceptable, we affirm the sentence imposed by the district court.

■ The Sentencing Guidelines allow a trial judge to depart from the Guidelines based on aggravating or mitigating circumstances not adequately considered by the Sentencing Commission in formulating the Guidelines. 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0. When a judge decides to depart from the Guideline range, he must articulate the specific reasons for making the departure. 18 U.S.C. § 3553(c)(2). We

---

1. Hatch raised a third objection at trial involving the definition of "specific intent" for purposes of the mail fraud statute. Since he did not include this objection in his arguments to this court, we need not address this issue. Our review of the record, however, indicates that the jury instructions sufficiently defined specific intent.

grant the district judge wide discretion to decide whether aggravating factors exist to support an upward departure. *United States v. Murillo*, 902 F.2d 1169, 1171 (5th Cir.1990). We will, however, reverse a sentence based upon an incorrect application of the Guidelines. 18 U.S.C. § 3742(f)(1).

■ The district judge stated that the payments to Hatch authorized by Averitt represented a significant portion of the UPSO operating budget. This loss caused a serious disruption of a governmental function, the operation of the UPSO. Because the applicable Guidelines range did not sufficiently consider this conduct, the district judge decided to depart from the Guidelines. The Sentencing Guidelines explicitly contemplate that a serious disruption of a governmental function can warrant an upward departure from the applicable sentencing range. U.S.S.G. § 5K2.7.

Averitt contends that he was penalized sufficiently for any governmental disruption his offense caused by a two level increase included in his offense level calculation for abuse of a position of public trust. U.S.S.G. § 3B1.3. Arguing that it is impossible to abuse a position of public trust without causing a disruption of a governmental function, Averitt urges that the district judge incorrectly applied the Guidelines by compounding his sentence for the same factor.

The Guidelines permit a two level enhancement for abuse of a position of public trust in § 3B1.3. In § 5K2.7, the Commission also included disruption of a governmental function as a reason to depart from the applicable Guideline range. By including these factors separately in the Guidelines the Commission certainly assumed the possibility of increasing a defendant's sentence using both factors. The simple answer to Averitt's contention is that it takes little imagination to hypothesize situations in which a position of public trust is abused without disrupting a governmental function. The district judge found that the applicable Guidelines range did not adequately address Averitt's crime. He then concluded there were reasons acceptable under the Guidelines for his departure

from the calculated range. We hold that the district judge applied the Guidelines within the range of his authority in this instance.

Averitt also challenges the adequacy of the court's stated specific justifications for the additional upward departure because of his related conduct not prosecuted in this case. Averitt claims that the court improperly relied on the facts underlying the unprosecuted charges in counts 1 and 2 of the indictment to justify the upward departure. He also alleges that the court's factual findings based on counts 1 and 2 are clearly erroneous and that the sentence imposed by the judge is unreasonable. Counts 1 and 2 addressed the fraudulent consulting relationship with appellant Hatch. Averitt pleaded guilty to one count of mail fraud (Count 14) for activity having no connection to his arrangement with Hatch.

■ We affirm an upward departure if the judge provides acceptable reasons for the departure and if the sentence is not unreasonable. *United States v. Fields*, 923 F.2d 358 (5th Cir.1991); *United States v. Perez*, 915 F.2d 947, 948 (5th Cir.1990). Section 1B1.4 of the Sentencing Guidelines provides that "the court may consider, without limitation, any information concerning the background, character and conduct of the defendant" in its decision to depart from the Guidelines. *See United States v. Murillo*, 902 F.2d 1169, 1172 (5th Cir.1990). We cannot disturb factual findings of the district court supporting the upward departure unless they are clearly erroneous. 18 U.S.C. § 3742(e).

■ The district court provided acceptable reasons for the upward departure. Under § 1B1.4 the court had the authority to consider the charges in counts 1 and 2 to depart from the Guidelines range. The Presentence Report indicated that Averitt's involvement in the fraudulent consulting contract with Hatch resulted in a loss of $43,750 to the UPSO budget. The Report concluded that a loss of this amount from the budget of a small parish had a significant impact on its law enforcement capabilities. The district court relied on this assessment as a factor in finding that Averitt

had caused a serious disruption in a governmental function. Averitt has failed to demonstrate that this factual finding was clearly erroneous.

Similarly, we have no difficulty with the judge's determination that Averitt's conviction resulted in irreparable harm to public confidence in law enforcement. Certainly conviction of the highest elected law enforcement official in the parish eroded public confidence in its sheriff's office. We hold that the judge provided acceptable reasons for the upward departure in Averitt's sentence.

■ We also hold that the sentence imposed by the district court is not unreasonable. The departure from the Guidelines range is ten months. We have upheld much greater departures as reasonable. See, e.g., United States v. Harvey, 897 F.2d 1300, 1305 (5th Cir.1990), cert. denied, — U.S. ——, 111 S.Ct. 568, 112 L.Ed.2d 574 (1991); United States v. Geiger, 891 F.2d 512, 513 (5th Cir.1989), cert. denied, — U.S. ——, 110 S.Ct. 1825, 108 L.Ed.2d 954 (1990). The twenty-four month sentence received by Averitt is only three months longer than the sentence Hatch received for his mail fraud conviction. Significantly, the sentence imposed is well within the five year maximum allowed under the substantive mail fraud statute. See 18 U.S.C. § 1341.

Finally, Averitt contends that the district judge relied upon an impermissible factor in making his decision to depart upward from the Guidelines. He claims that the judge considered his failure to testify or participate in Hatch's trial as a reason for the upward departure. Under the Sentencing Guidelines, "a defendant's refusal to assist authorities in the investigation of other persons may not be considered as an aggravating sentencing factor." U.S.S.G. § 5K1.2. If the district judge relied upon this factor as his reason for increasing Averitt's sentence, he committed error.

The judge's Sentencing Memorandum contains no mention of Averitt's failure to cooperate in Hatch's trial as a reason for the upward departure. The reasons offered in the Sentencing Memorandum for the upward departure involve only the disruption of governmental activities caused by Averitt's related activities with which he had been charged. During the sentencing hearing the district judge did mention in passing Averitt's failure to cooperate, but the record gives no indication at all that he relied on this impermissible factor in imposing sentence. The Sentencing Memorandum states permissible reasons for the departure. We see no reason to assume that the district judge relied on other reasons in making his decision.

## Conclusion

Hatch has failed to demonstrate any infirmity in his convictions justifying reversal. The government presented evidence sufficient to support the jury's verdict that he committed mail fraud and conspired to commit mail fraud. The government's comments during closing argument were within acceptable bounds. The jury relied on adequate instructions given by the trial judge to arrive at its decision.

Averitt has also failed to establish a reason to upset the sentence imposed by the district court. Although the judge departed upward from the Guidelines range, he properly articulated the reasons for this departure. We hold that the reasons given are valid and that Averitt's sentence is reasonable.

The judgments of the district court in both cases are properly affirmed.

AFFIRMED.