UNITED STATES of America,
Plaintiff–Appellee,

v.

Ali I. MIZYED, also known as Many Sabaty, Defendant–Appellant.

No. 90–1230.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 29, 1990.
Decided March 18, 1991.

Sheila Finnegan, Lisa K. Osofsky, Barry R. Elden, Asst. U.S. Attys., Office of the U.S. Atty., Crim. Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee.

Chris Averkiou, Chicago, Ill., for defendant-appellant.

Before CUDAHY, RIPPLE, and MANION, Circuit Judges.

MANION, Circuit Judge.

Ali I. Mizyed appeals his conviction on six counts of mail fraud in violation of 18 U.S.C. § 1341. We affirm.

## I.

Mizyed was the manager of J & J Foods, a small grocery store on Chicago's south side. In 1985 and 1986 he developed and engaged in a scheme to supplement his income by falsely redeeming large quantities of coupons as if they were submitted to him by customers at his store.

The coupons were issued by manufacturers for consumer use in buying their products at various retailers. The retailer would then send the coupons directly to the manufacturer, or to a coupon clearing house which would send the coupons to the manufacturer for a percentage of the handling fee. The manufacturer or coupon clearing · house would then send a reimbursement check to the retailer for the amount specified on the coupons plus a fee for handling the coupons.

Mizyed was responsible for the daily operations of J & J Foods on behalf of an absentee owner, Isa Hamdan. J & J Foods stopped accepting coupons in May 1985.

Mizyed, along with a man named Nasser, devised a scheme to submit coupons to manufacturers and coupon clearing houses, representing them as coupons redeemed by customers of J & J Foods, and to split the proceeds of any money they received.

Manufacturers and coupon clearing houses determined the validity of coupons by two methods: 1) physical inspection—to make sure coupons were not in mint condition, washed and dried to appear used, or mass cut by one person at one time; and 2) requiring retailers to fill out questionnaires or service agreement contracts that detailed, among other things, the size of the store, number of cash registers, yearly sales volume, and the name of the owner. Mizyed submitted service contracts and questionnaires to several clearing houses and manufacturers, all containing false information. The pattern was to grossly exaggerate the size and sales volume of the store, and sign it with a false name. Some of the manufacturers and clearing houses refused to make any payments, either because they suspected the coupons were mass cut or washed and dried, or because too many coupons were submitted to have possibly come from the store, despite Mizyed's exaggeration of its size. Others sent checks for a nominal portion of the coupons submitted. But one clearing house, Coupon Clearing Service (CCS), sent checks totalling more than $22,000 over the course of the scheme.

On December 3, 1986, and January 2, 1987, Mizyed was interviewed by FBI agents. On both occasions he confessed, admitting that he submitted questionnaires with false information through the mail, that J & J Foods did not accept coupons, and that he split the proceeds with Nasser. Mizyed alleged that the FBI agents told him on December 3, 1986, that "It would be better for you to talk to us. Otherwise we will take you in." The FBI agents deny making that statement.

Mizyed was indicted on eight counts of mail fraud on June 27, 1989. A superseding indictment was filed July 21, 1989. He pleaded not guilty. On August 22, 1989, Mizyed filed a motion to suppress his con-

fession to the FBI agents, alleging that it was not made voluntarily. Judge Shadur denied that motion on September 8, 1989.

At trial, the government introduced Mizyed's confession, along with expert testimony on handwriting and fingerprints that linked Mizyed to the false questionnaires. Representatives of manufacturers and coupon clearing houses testified as to their practice in checking coupon submissions, and their resolution of the coupons submitted by J & J Foods. Mizyed put on three witnesses (two relatives and a close friend) who attested to his law abiding character and his good reputation in the community.

Mizyed was convicted on six counts of mail fraud on November 20, 1989. His motion in arrest of judgment, alleging that the indictment did not describe the offense of mail fraud with the required specificity, was denied. He was sentenced on January 23, 1990, to 60 days work release and five years probation.[1] As a condition of probation, Mizyed was to file past due tax returns, perform 300 hours of community service, and make restitution in the amount of $25,115.

## II.

Mizyed raises four issues on appeal—the sufficiency of the indictment, the denial of the motion to suppress, the sufficiency of the evidence, and the validity of the restitution order. None of these issues provides a basis for reversal.

■ The indictment is alleged to be insufficient because it does not identify the victims of the mail fraud. Mizyed relies on a century-old case, *United States v. Hess*, 124 U.S. 483, 8 S.Ct. 571, 31 L.Ed. 516 (1888), which held that merely restating the terms of the statute in the indictment was insufficient. *Hess* does not stand for the proposition that a victim of the alleged mail fraud must be identified in the indictment. Rather, *Hess* makes the obvious point that the indictment must include "such a state-

ment of the facts and circumstances as will inform the accused of the specific offense ... with which he is charged." *Id.*, 124 U.S. at 487, 8 S.Ct. at 573. We have reviewed the indictment, and find that it properly details the factual circumstances that caused Mizyed to run afoul of the law. Thus, the government properly met "the object of the indictment," which is, "to furnish the accused with such a description of the charge against him as will enable him to make his defence ...". *Id.* This court previously has affirmed the sufficiency of indictments which do not identify specific mail fraud victims by name. *See e.g. United States v. Barber*, 881 F.2d 345, 348–49 (7th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1956, 109 L.Ed.2d 318 (1990) ("It is true that the indictment does not allege an actual monetary or economic loss to any insurance company. However, it is not necessary that an indictment charging mail fraud contain such an allegation.") Similar to *Barber*, Mizyed's indictment charged him with defrauding various coupon clearing houses and manufacturers, and that is sufficient.

■ Mizyed alleged in his motion to suppress that FBI agents who told him it would be better for Mizyed to talk to them, and that otherwise they would take him in, "excited hope and fear" in Mizyed, and thereby "induced" his confession. The district court denied the motion to suppress and request for an evidentiary hearing without comment, even though the FBI agents denied making the statement. The court apparently found, as a matter of law, that the statements could not have violated Mizyed's Fifth Amendment right against self-incrimination. We agree.

The test for a confession's voluntariness comes from *Culombe v. Connecticut*, 367 U.S. 568, 602, 81 S.Ct. 1860, 1879, 6 L.Ed.2d 1037 (1961) (citations omitted):

Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to

1. On January 23 the court entered judgment on the verdict, but apparently because of a typographical error sentenced Mizyed to six months work release. On September 21, 1990, the dis-

trict court issued an order correcting the sentence to 60 days work release. Mizyed completed that portion of the sentence on September 24, 1990.

confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process.

Does the Fifth Amendment, as Mizyed contends, prevent the police from encouraging a confession "by any direct or implied promise, however slight"? Certainly not. As we put it in *United States v. Rutledge*, 900 F.2d 1127, 1130 (7th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 203, 112 L.Ed.2d 164 (1990):

> The policeman is not a fiduciary of the suspect. The police are allowed to play on a suspect's ignorance, his anxieties, his fears, and his uncertainties; they just are not allowed to magnify those fears, uncertainties, and so forth to the point where rational decision becomes impossible.

Viewing the "totality of all the surrounding circumstances," *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973), nothing alleged by Mizyed indicates that his will was overborne or that "rational decision [was] impossible." As Mizyed recognizes on appeal, he was not in custody. There is nothing in the alleged statement that could improperly induce a confession. The agent's statement might have meant no more than that it would be more convenient for Mizyed to talk at home than at the station. If he had declined to talk, and if the FBI agents had taken him into custody, he would have received *Miranda* warnings and the opportunity to request appointed counsel. Even if the statement was considered a promise to make Mizyed's cooperation known to the prosecutor, the confession was not unconstitutionally induced. *United States v. Pace*, 898 F.2d 1218, 1246 (7th Cir.1990). Because there was no "significant, disputed factual issue," the district court was not required to hold an evidentiary hearing; the question of whether the agent actually made the statement was not significant. *United States v. Sophie*, 900 F.2d 1064, 1071 (7th Cir.1990). The district court properly denied the motion to suppress.

■ Mizyed contends the evidence is insufficient because "the oversubmission of coupons to a manufacturer or a clearing house does not amount to a violation of Federal law." He argues that because some of the coupon clearing houses and manufacturers examined and rejected many coupons, yet continued to accept submissions, the oversubmission of coupons must be an expected part of the business and therefore not a crime. Of course that is nonsense. Retailers anticipate shoplifters; insurers expect false or inflated claims; shippers encounter pilferage. Because a business employs measures to limit these practices does not transform the crime into a subsidy for dishonest people. Prosecution is the proper final measure to punish the violator and to deter others. The government proved all the elements of mail fraud: 1) a scheme to defraud in which Mizyed participated; 2) intent to defraud; and 3) use of the mails in furthering the scheme. *United States v. Cosentino*, 869 F.2d 301, 308 (7th Cir.), *cert. denied*, 492 U.S. 908, 109 S.Ct. 3220, 106 L.Ed.2d 570 (1989). Mizyed confessed that he and another man entered into a scheme to defraud companies of money by sending false information and unredeemed coupons through the mail. That evidence was sufficient for a rational trier of fact to conclude that the crime of mail fraud was proved beyond a reasonable doubt.

■ Finally, Mizyed argues that the order of restitution is invalid because it fails to specify the victims to whom restitution must be paid. This argument is waived because it was not raised before the district court. *See United States v. Adamo*, 882 F.2d 1218, 1233 (7th Cir.1989). Even if the issue is not waived it lacks merit. There is no requirement that the judgment and commitment order detail how much money each victim is to receive. Mizyed is required to pay $25,115 to the court, and the court will divide it among the victims. The evidence before the district court specifically detailed how much money was defrauded from each company, so the district court should have no difficulty dis-

983

tributing the appropriate amount to each
victim.

For all of the foregoing reasons, the
judgment of the district court is, in all
respects,

AFFIRMED.