WIDENER, Circuit Judge,
dissenting:
I respectfully dissent.
While it is true that by the time the courtroom proceedings before the jury commenced Loayza had notice of the acts with which he was charged and that following the trial, a reference to the whole record, including the bill of particulars, would suffice to sustain a plea of former jeopardy in any future trial, it is not true that the Fifth Amendment’s requirement, that the indictment show that he was indicted by a grand jury on account of the same acts for which he was tried, was complied with. In that connection, it is plain that the requirement of Rule 7(c)(1) of the Federal Rules of Criminal Procedure, which give effect to the Fifth Amendment to the Constitution, that “[t]he indictment ... shall be a plain, concise and definite written statement of the essential facts constituting the offense charged” has been violated, as I will demonstrate.
I.
At trial Loayza moved for the dismissal of all the counts of the indictment (ONE-SIX) for failing to name and describe the investors designated; failing to describe the nature of the misrepresentation made to each of said investors and the date and manner in which it was made; and failing to describe sufficiently the item placed in or taken from the mail. Additionally, he moved to dismiss Counts FOUR, FIVE, and SIX for failure to allege venue within the jurisdiction of the court. The district court denied Loayza’s motion, but ordered the government to file a bill of particulars. There is no question on appeal with respect to venue or the nature of misrepresentation made to the investors.
The six-count indictment[1] alleges that Loayza solicited 11 investors and took from them a total of $628,000 pursuant to his fraudulent scheme.
In each of Counts ONE, TWO and THREE,[2] the indictment includes the allegations with respect to the Ponzi scheme and then alleges that Loayza, on a given date,
did take and receive ... from the mail, a check in the amount of $10,000, which was mailed by an investor
solicited on the basis of the fraudulent Ponzi scheme. The indictment does not disclose the name of the investor, neither does it otherwise identify the investor. The indictment does not disclose the date of the check; it does not disclose the serial number of the check; it does not disclose the drawer of the check; it does not disclose the bank on which the check was drawn; it does not disclose the payee of the check; it does not disclose the date of mailing of the check; or to whom the cheek was mailed; where the cheek was mailed from; neither does it disclose where the cheek was taken from the mail other than the Eastern District of Virginia.
Counts FOUR and FIVE fare no better.[3] They reallege the Ponzi scheme and then *-1308 provide that on a given date in the Eastern District of Virginia, Loayza
did knowingly cause to be delivered by mail according to the direction thereon, a check in the amount of ... [$_,] which was mailed by Keystone Fund to an investor
solicited on the basis of the fraudulent representations of the Ponzi scheme.
The indictment does not disclose the bank on which the cheek was drawn, the date of the check, the number of the check, the drawer of the check, the name of the investor, the date of mailing to the investor, nor does it disclose the date of mailing by the investor at Loayza’s direction.[4] The indictment also does not otherwise identify the investor or which Keystone Fund is involved. Even a rural newspaper lists in its daily financial mutual fund section 12 entries under Keystone, each obviously representing a different mutual fund belonging to a family of funds. See e.g. Bristol Herald Courier/Virginia-Tennessean 7b, Dec. 11, 1996. Without more, one can only assume the indictment refers to the Keystone Management, Inc. company, but of that one cannot be certain.
Keystone Management, Inc. oversees at least 31 different mutual funds that hold some $9.5 billion in assets. Keystone’s largest fund contains assets valued at $1.4 billion (Keystone Custodian Funds, Inc. K-l Series) and even the smallest fund is worth $5.1 million (Keystone America Texas Tax Free Fund). See Investment Company Institute, 1995-1996 Directory of Mutual Funds (1995) (listing individual funds and asset value as of Sept. 10, 1994). As of September 30, 1996, another mutual fund reporter which tracks funds and their different classes listed no less than 67 entries for Keystone with assets totaling approximately $9.6 billion. Johnson’s Charts, Quarterly Performance Report 4.6 (Sept. 30,1996). In light of these massive holdings the indictment’s bald statement that “Keystone Fund” mailed a check does nothing to increase the specificity of the indictment. Which Keystone fund, if any, was the drawer of the check is nowhere disclosed. In fact, the recital of the mailing of the check by one of 31 Keystone funds only serves to underscore the vagueness of these deficient counts. As Loayza argued in his pretrial challenge to the indictment, from the too meager recitals of the indictment it is impossible to identify the cheeks and transactions involved. One may only guess at how many dozens, hundreds, or thousands, of cheeks Keystone causes to be delivered by mail on a daily basis in the managing of its multi-billion dollar holdings, either in the specified amounts or any other amount.
This said, Counts FOUR and FIVE also fail to state to whom the checks were payable, upon what banks they were drawn, to whom they were sent, or the places of either mailing or receipt.
II.
Rule 7(c)(1) of the Federal Rules of Criminal procedure requires that every indictment contain “a plain, concise and definite written statement of the essential facts constituting the offense charged.” This rule acts to guarantee several constitutional protections, and thus the sufficiency of the indictment may be evaluated according to whether it actually serves each of these functions. In Russell v. *-1307 United States the Court stated, first, that to ensure the defendant’s Sixth Amendment right to know what he is charged with, the indictment must contain the elements of the offense intended to be charged and “sufficiently apprise[] the defendant of what he must be prepared to meet.” Russell v. United States, 369 U.S. 749, 763-64, 82 S.Ct. 1038, 1047, 8 L.Ed.2d 240 (1962). Second, to guarantee a defendant’s Fifth Amendment protection against double jeopardy “the record [must] show[ ] with accuracy to what extent he may plead a former acquittal or conviction.” 369 U.S. at 764, 82 S.Ct. at 1047. Double jeopardy protection is not at issue here because, as mentioned above, when the bill of particulars was included and evidence was taken, the record sufficiently identified the specific transactions for which he was convicted to protect him against any subsequent prosecution. Russell, 369 U.S. at 764, 82 S.Ct. at 1047; see Wright, 1 Federal Practice and Procedure § 125 n.6 (citing Russell). And Loayza also knew from the indictment he was being charged with mail fraud, but the indictment is far too vague in describing the acts with whieh Loayza was charged to pass either procedural or constitutional muster.
Central to the deficiency of the instant indictment, is the Fifth Amendment’s requirement that “[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of Grand Jury....” This provides another standard for the sufficiency of an indictment. See 8 Moore, Federal Practice ¶ 7.02 (1996).
The Court in Russell explained that “The very purpose of the requirement that a man be indicted by a grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge.” Russell, 369 U.S. at 771, 82 S.Ct. at 1051 (quoting Stirone v. United States, 361 U.S. 212, 218, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960)). This fundamental protection “is designed as a means, not only of bringing to trial persons accused of public offenses upon just grounds, but also as a means of protecting the citizen against unfounded accusation, whether it comes from the government, or be prompted by partisan passion or private enmity. No person shall be required ... to answer for any of the higher crimes unless ... [the grand jury] shall declare ... that there is good reason for his accusation and trial.” Stirone, 361 U.S. at 218 n. 3, 80 S.Ct. at 273 n. 3 (quoting Ex parte Bain, 121 U.S. 1, 11, 7 S.Ct. 781, 786-87, 30 L.Ed. 849 (1887)). The Court has stressed that the indictment must be complete and definite in its charges because
[t]o allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure. For a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him.
Russell, 369 U.S. at 770, 82 S.Ct. at 1050.
In Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), the defendant was charged with one violation of federal law (interference with interstate transport of sand) while at trial proof of another basis for the violation was permitted (interference with interstate steel shipments). The Court reversed the conviction, finding that the defendant’s Fifth Amendment rights were abrogated because it was impossible to tell whether the defendant was convicted for the same violations for which he was indicted. Stirone, 361 U.S. at 219, 80 S.Ct. at 274. Similarly, even if the record at trial makes clear which transactions the jury considered in convicting Loayza, from the indictment we have no indication of what evidence of which transactions were presented to the grand jury in its decision to indict. The sparse indictment does not specify the serial numbers of the checks involved, the investors involved, the banks on which the checks were drawn, to whom the checks were payable, the dates of the checks, the dates or place of mailing in all of the counts, the date of receipt in Counts FOUR and FIVE, or which one of the 30-odd Keystone funds was the drawer of the check.
*-1306 Indeed, exhibiting to the grand jury any check in the amount of $10,000, regardless of the date, number, bank, payee or drawer, and whether paid or unpaid, would have satisfied Counts ONE and TWO of the indictment. Almost the same difficulty is present for Counts FOUR and FIVE. For each of those counts, any check ever written in the amounts indicated in the indictment by any of the 30-odd Keystone funds, regardless of date, number, bank, or payee, upon being presented to the grand jury would have satisfied the vague requirements of the indictment. And it is even doubtful, at best, that such check should have been drawn by any of the Keystone funds because the indictment provides in Counts FOUR and FIVE only that the checks were “mailed by Keystone,” not made or drawn by Keystone.
Thus we cannot say “with certainty that ... [Loayza] was convicted solely on the charge made in the indictment the grand jury returned.” Stirone, 361 U.S. at 217, 80 S.Ct. at 273.
III.
While the majority opinion does recognize that a bill of particulars cannot cure a defective indictment, it is well to emphasize that the Supreme Court has so held in Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962).
Along the same line, to any extent that the majority opinion, p. 260, relies on a lack of prejudice on account of the defective indictment, that reliance is not well taken because we have decided, in United States v. Daniels, 973 F.2d 272, 275 (4th Cir.1992), that when there has been, as here, “... a timely objection to the sufficiency of the indictment, an absence of prejudice is irrelevant.” As Daniels points out, our en banc court decided the same question in United States v. Hooker, 841 F.2d 1225 (4th Cir.1988) (en banc), and United States v. Pupo, 841 F.2d 1235 (4th Cir.1988) (en banc").
TV.
The majority opinion depends on three eases to support its affirmance. They are: United States v. Mizyed, 927 F.2d 979, cert. denied, 500 U.S. 937, 111 S.Ct. 2065, 114 L.Ed.2d 470 (1991); United States v. Hatch, 926 F.2d 387 (5th Cir.), cert. denied, 500 U.S. 943, 111 S.Ct. 2239, 114 L.Ed.2d 481 (1991); and United States v. Arlen, 947 F.2d 139 (5th Cir.1991), cert. denied, 503 U.S. 939, 112 S.Ct. 1480, 117 L.Ed.2d 623 (1992).
I suggest, however, that none of them support the conclusion of the majority. Miz-yed was a ease in which the defendant was convicted of mail fraud in connection with a scheme involving a false redemption of food coupons from food manufacturers and others. The defendant had admitted that he had submitted false information in questionnaires sent through the mail, the false information being that J & J Foods, his employer, did accept coupons while, in fact, J & J Foods did not accept coupons. The sole question raised as to the indictment was that the names of the victims of the mail fraud were not identified in the indictment. No other objection was made. The court examined the indictment and found that it “properly detailed the factual circumstances that caused Mizyed to run afoul of the law.” 927 F.2d at 981. The other terms of the indictment are not made a part of the opinion, neither are they recited, so we do not know what else it contained, but, since the only objection was the lack of names, that opinion can stand for no more than if such is the sole objection an indictment otherwise sufficiently identifying facts will suffice and the indictment will stand. To use Count FIVE of the ease at hand as an example, one of the checks involved was No. 00231838, dated March 27, 1992 and payable to Shirley L. Vaillancourt, in the amount of $5,000, Keystone Series B-l, Account No. 46-1004898042, drawn by Keystone Investor Resource Center [illegible] Disbursement Agent /s/ Ralph L. Spaulding. Had that data, or enough thereof to identify the transaction, been disclosed except the name of Shirley L. Vaillancourt, the description in the indictment of course should be held sufficient, and the mere omission of the name Shirley L. Vaillancourt should not invalidate the indictment. But the government here, having in its previous possession all of the data with respect to the check, disclosed none of it except its amount.
*-1305 In United States v. Hatch, a Louisiana sheriff, in legal possession of the general fund for his office, authorized his chief civil deputy to send a check to Hatch in the amount of $25,000, drawn on the general fund. Such check was sent by mail. The $25,000 payment was for services which Hatch did not actually provide, and the government’s contention was that Hatch and the sheriff planned to defraud the general fund of the money. The indictment alleged a scheme to defraud the Union Parrish Sheriff’s Office of the money. Hatch contended that since the general fund was not a separate legal entity from the sheriff’s office, it was impossible to defraud the office. The court decided that naming the sheriffs office as the party defrauded did not prevent Hatch from ascertaining the charges against him. Indeed, the court stated accurately the issue: “[s]ince the UPSO is not a legal entity Hatch claimed that it is impossible to defraud the UPSO [Union Parrish sheriffs office].” 926 F.2d at 391. The only question decided in that case was that it was possible to defraud the sheriffs office, therefore the Hatch opinion should have no effect on our decision at all. The indictment in Hatch omitted or concealed nothing; only the legal effect of the fact disclosed in the indictment was involved.
United States v. Arlen is much like United States v. Hatch. In the Arlen case, the indictment charged that the defendant, with the intent to defraud and mislead, had delivered for introduction into interstate commerce certain prescription drugs without a prescription. The indictment set forth the date of the delivery, the name of the drug, and the recipient of the drug. The statute involved was 21 U.S.C. § 333(b), which required for the degree of the offense charged that the violation be “with the intent to defraud or mislead.” The court instructed the jury that if it believed that violation was with the intent to defraud or mislead the government in its regulation of drugs, that was sufficient to satisfy the statute. The court simply held that since the statute did not require any particular person or organization to be defrauded, only that the intent be there, the indictment was sufficient without specifying who must be defrauded.
Again, Arlen, as Hatch is similarly, is only a case of statutory construction having little or nothing to do with identifying the transaction involved. Indeed, a reference to the indictment in n.6 of the Arlen opinion, 947 F.2d at 145, sets out exactly the transaction with which Arlen was charged: the date of the act, the name of the drug, and the recipient of the drug. But the government, here, even with all the information at hand, chose not to identify with any reasonable certainty the acts with which Loayza was charged. Its omission of the name is only a part of the deficiency, and a small part at that.
In this circuit, we have indeed arrived at a like conclusion as in Hatch and Arlen in United States v. Darby, 37 F.3d 1059 (4th Cir.1994), which involved the construction of a statute involving a threatening communication in violation of 18 U.S.C. § 875(c). Neither Hatch, nor Arlen, nor Darby involved the omission of sufficient factual information to identify the acts with which the defendant was charged,[5] the .only decisions in those cases being the construction of a statute or of a term used in the indictment.
V.
The .decisions in this circuit and as well the decisions of other circuits are consistent with the teachings of Russell and Stirone, and have, with considerable uniformity, dismissed indictments which did not state the essential facts constituting the offense charged.
United States v. Hooker, 841 F.2d 1225 (4th Cir.1988) (en banc), was a RICO prosecution under 18 U.S.C. § 1962(c), which re *-1304 quired the enterprise involved be engaged in activities which affect interstate commerce. The indictment omitted the allegation that the activities charged, money laundering by Hooker, had an effect on interstate commerce. The en banc court held that the indictment was deficient not only for failing to state an offense but because it “did not satisfy the Fifth Amendment requirement that all elements of the offense have been considered and found by the grand jury.” 841 F.2d at 1230. We rejected arguments that such omission could be cured by a bill of particulars or jury instructions or a reference to the statute.
United States v. Pupo, 841 F.2d 1235 (4th Cir.1988) (en banc), was a companion case to Hooker. The indictment was for possession with intent to distribute and the distribution of cocaine. The statute required that the distribution be knowingly or intentionally done. Although the indictment referred to the statute, the fact that the distribution was known or intentional was omitted from the indictment, and we held the indictment must be dismissed on that account. We held that “a mere citation to the applicable statute does not give a defendant notice of the nature of the offense.” 841 F.2d at 1239.
We followed Hooker and Pupo in United States v. Daniels, 973 F.2d 272 (4th Cir. 1992). Daniels was a case in which the defendant was convicted of possessing and transferring a sawed-off shotgun. The indictment described the shotgun and the transfer in detail but omitted a reference to the code section permitting the transfer. The district court permitted an amendment to the indictment merely to add a reference to the code section. We held that this was in violation of the Fifth Amendment’s requirement that a defendant must be prosecuted for a capital or infamous offense only on indictment by a grand jury. Since the indictment on which Daniels was tried did not include the statutory reference, we held the indictment had to be dismissed. Again, we acknowledged that the result was required although Daniels had adequate notice of the charges and received a fair trial.
United States v. Hayes, 775 F.2d 1279 (4th Cir.1985), was a case of like effect which preceded Hooker, Pupo and Daniels. Hayes was a case under the Travel Act in which 18 U.S.C. § 1952(a) required that the travel be done with intent to carry on or facilitate the promotion of an unlawful activity, the activity in the case being the bribery of a public official in violation of state law. While the requirement of the statute of travel for bribery was plainly set out in the indictment, the indictment did not allege the' fact that Hayes had thereafter attempted to perform or performed' the violation of state law which he had been charged with traveling to do. We held that was a violation of Fed.R.Crim.P. 7(c)(1) because it did not set forth an essential element of the crime being charged.
Other circuits have come to the same conclusion. United States v. Tomasetta, 429 F.2d 978 (1st Cir.1970), was a prosecution for loan sharking under 18 U.S.C. § 894 in which the defendant was charged in the indictment that on a given date at Worcester he did “participate in the use of extortionate means ... namely an express and implicit threat of use of violence to cause harm to the person or certain persons to collect or attempt to collect extensions of credit.” The court held that indictment to be invalid under Rule 7(c) because, unless the defendant could demonstrate he was not in the City of Worcester during the entire day in question, he could not have provided an alibi because the precise time and place were not specified in the indictment, p. 980; because of the failure to specify the means by which the alleged threats were communicated, p. 980; and because of the failure to name the victim, p. 980. The court described the indictment as accusing the defendant “of making threats by an unstated means to an unnamed person on a particular day in a city of moderate size,” p. 979. The court stressed that no one factor was determinative, but when taken together, they made it unfair to require the defendant to answer the charge. The indictment in Tomasetta is little different from the indictment at hand. The victim in neither indictment is named. While use of the mail is alleged in the indictment in this case, precise or even reasonably certain dates of mailing are not disclosed. Neither are any details with respect to the checks disclosed. All of *-1303 this information was in the hands of the government and I suggest it is at least as unfair to require Loayza to answer the indictment in this case as the First Circuit held it was unfair for Tomasetta to answer in that case.
This quotation from the Tomasetta court is just as applicable here:
On an indictment as vague as that at bar, it is possible, however unlikely, for a prosecutor to obtain a conviction based wholly on evidence of an incident completely divorced from that upon which the grand jury based its indictment. The prosecution may not have the power to “roam at large” in this fashion.
Tomasetta, 429 F.2d at 980 (citing Russell v. United States, 369 U.S. 749, 768-771, 82 S.Ct. 1038, 1049-51, 8 L.Ed.2d 240 (1962)).
In United States v. Cecil, 608 F.2d 1294 (9th Cir.1979), an indictment which gave the period of the conspiracy and named the conspirators in a charge of conspiring to distribute marijuana gave no other facts. The court required the dismissal of the indictment stating “our decision is based upon the absence of any factual particularity within the indictment.” In Cecil, as here, the trial court had recognized the short-coming of the indictment and required a bill of particulars, which the court of appeals held could not save the invalid indictment.
United States v. Curtis, 506 F.2d 985 (10th Cir.1974), was a mail fraud case involving a Computer Matching Institute, in which the defendant’s scheme to defraud was based on a false representation that he could match by computer people looking for dates or marriages, when in fact he could not. The court required the dismissal of the indictment because the unlawful scheme or plan was “masked, if not concealed, by the conclusion-ary language of the indictment as framed.” p. 987. The court stated on p. 989 that “for all the indictment shows, the grand jury may have had a concept of the scheme essentially different from that relied upon by the government before the trial jury.” That same defect is present in the ease at hand, among other reasons, because of the vagueness of the indictment with respect to the names of the investors and any even minor detail with respect to the checks.
In United States v. Nance, 533 F.2d 699 (D.C.Cir.1976), the court required dismissal of an indictment which had charged the obtaining of something of value by false pretenses with intent to defraud in violation of D.C.Code § 22-1301(a). While the indictment stated the name of the victim, the date of the false representation and the amounts involved, it did not state what was the false representation, describing the same only as “the false representations ” (italics in original). The reason the court required the dismissal of the indictment was that the United States Attorney would have a free hand to insert the vital part of the indictment without reference to the Grand Jury, p. 701. That same condition pertains here with respect to the unnamed investors and inadequately described checks.
VI.
From the discussion set forth above, it follows that I would require the indictment to be dismissed without prejudice to reindict Loayza.
I would not even find it necessary to decide the constitutional question but would require the dismissal because the indictment is in violation of Fed.R.Crim.P. 7(c)(1). Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 341, 347, 56 S.Ct. 466, 480, 483, 80 L.Ed. 688 (1936) (Justice Brandéis, concurring). Even if the key parts of the indictment are concise in that they are terse, it is neither plain nor definite nor does it contain the essential facts constituting the offense charged as required by that rule.
If somehow or other a dependence on Rule 7(e) were not in order, I would have no hesitation in holding the indictment invalid under the grand jury requirement of the Fifth Amendment because the indictment does not sufficiently identify the acts with which Loayza was charged and it follows that there is no way to tell from the indictment whether Loayza was convicted of the same *-1302 acts for which he was indicted by the grand jury.

. The sixth count, drafted in similar fashion to Counts FOUR and FIVE, was dismissed before trial.

. Counts ONE, TWO and THREE are identical in their lack of detail, only the date of taking from the mail differs. Typical of these three counts, Count TWO states:

COUNT 2

THE GRAND JURY CHARGES THAT:
1. Paragraphs 1, 2, 3, 4, 5 and 6 of Count One of this indictment [describing the Ponzi scheme] are hereby realleged and incorporated herein by reference as though fully set forth herein.
2. On or about April 8, 1991, in the Eastern District of Virginia, for the propose of executing the aforesaid scheme and artifice and attempting to do so, SALOMON S. LOAYZA did take and receive and cause ,to be taken and received from the mail, a check in the amount of $10,000.00, which was mailed by an investor solicited on the basis of the false and fraudulent statements and representations described above.
(In violation of Title 18, United States Code, Section 1341 and Section 2.)

.Counts FOUR and FIVE are identical except as to the dates of causing to be delivered and amounts' of the checks. Count FOUR provides:

COUNTFOUR

THE GRAND JURY FURTHER CHARGES THAT:
*-1308 1. Paragraphs 1, 2, 3, 4, 5 and 6 of Count One of this indictment [describing the Ponzi scheme] are hereby realleged and incorporated herein by reference as though fully set forth herein.
2. On or about December 18, 1991, in the Eastern District of Virginia, for the purpose of executing the aforesaid scheme and artifice and attempting to do so, SALOMON S. LOAY-ZA did knowingly cause to be delivered by mail according to the direction thereon, a check in the amount of $20,000.00, which was mailed by Keystone Fund to an investor solicited on the basis of the false and fraudulent statements and representations described above.
(In violation of Tide 18, United States Code, Section 1341 and Section 2.)

. A fair reading of Counts FOUR and FIVE of the indictment indicates that each count refers to two mailings, one from the Keystone Fund to an investor, and another from the investor to Loay-za. After the bill of particulars was filed and proof was taken in the case, it has turned out that the government has depended on only one mailing, from the Keystone Fund to the investor. Who can tell what was presented to the grand jury?

. The government does not depend on the same authority as does the majority opinion. Rather, it relies solely on United States v. Caldwell, 544 F.2d 691 (4th Cir.1976). The indictment in Caldwell, however, provided in terms that the defendant, Caldwell by name, "on or about August 14, 1970, knowingly and wilfully placed and caused to be placed in the United States mails an envelope containing a check, said envelope being addressed to ‘The Greenbrier, White Sulphur Springs, West Virginia, 24986’ ” for the purpose of executing the scheme to defraud. 544 F.2d at 700. Thus, the Caldwell indictment set out information from which Caldwell could identify the transaction with which he was charged, factual recitals not present here.